## LAWRENCE *vs.* LAWRENCE.

Upon a bill filed by the wife against her husband for a separation, or limited divorce, if the next friend of the wife who prosecutes the suit is irresponsible, or insolvent, all proceedings may be stayed until security for costs is given, or a responsible person is substituted in his place ; and if such security is not given, or substitution made within a reasonable time, the bill will be dismissed.

The proportion of the husband's estate or income to be assigned to the wife for alimony, either pending the litigation, or on a final decree for a divorce or separation, is in the discretion of the court.

In fixing the amount of alimony, the court must take into consideration the nature and amount of the husband's means, the claims of his children and others upon him for sustenance and education, and his ability to support himself by his own exertions.

The alimony allowed to the wife for her support pending the litigation is always much smaller in proportion than that which is assigned to her as a permanent provision, after she has established her right to a divorce or separation.

Although it is an act of great unkindness, and of unreasonable oppression, on the part of the husband, to refuse to permit his wife to attend a particular church, of which she is a member, such refusal is not alone a sufficient ground to justify a separation.

THIS was a bill for a separation, filed by the wife against her husband. On a former day, upon the application of the wife, the court ordered the husband to advance to her next friend $50, towards the expenses of the suit, to be refunded, as the court should direct, if, upon the hearing, it should appear the suit was brought without any justifiable cause. It was also referred to a master to enquire and report what sum, if any, was necessary to be paid by the defendant for the support of his wife pending the litigation ; the master, in ascertaining the sum, to take into consideration the amount and income of the defendant's property, and the circumstances of the case, so far as the master should deem it necessary to enquire into those circumstances. By the report of the master it appeared that the real estate of the defendant was worth $2200, and produced an annual income of about $165 ; that the defendant had about $500 of personal property, consisting of furniture, &c. from which no income was

<span style="float:right">May 1.</span>

derived; that there were no children who required support from the defendant, except one son, 17 years of age, who was engaged as a clerk in a store, and supported himself in part. The master also reported that $100 per annum, payable in quarterly payments, was a suitable and necessary allowance for the support of the wife, pending the litigation; and he stated the reasons upon which that opinion was founded. On the hearing before the master, the defendant offered to prove, that the morning after he turned his wife and children from his house, as stated in the bill, he invited and requested her to return, and promised to provide for her and treat her kindly; and that he also informed her that he wished the children to return. He likewise offered to prove the declarations of the wife, made since that time, for the purpose of showing that the sole cause of the difficulties between the parties, was, that the husband was unwilling to permit his wife and children to attend the presbyterian church, of which she was a member, in Stillwater, on account of some personal controversies existing between him and some of the leading members of that society. The master decided that the testimony offered was inadmissible upon this reference; and that by the order, he was confined strictly to an inquiry into the amount of the allowance to be made to the wife, it being admitted she was living separate from her husband. The defendant excepted to the master's report. He also gave notice of an application to remove the next friend of the complainant. And the argument of the exceptions and of this motion came on to be heard at the same time. At the suggestion of the chancellor, the argument upon the exceptions was first heard; but at the close of that argument, and before any decision was made thereon, he directed the parties to proceed with the motion.

*J. P. Cushman*, for the complainant.

*A. Van Vechten & H. P. Hunt*, for the defendant.

THE CHANCELLOR. The application to remove the next friend of the complainant must be denied, with costs. The defendant, undoubtedly, has a right to require that the next

friend of the wife who prosecutes a suit for a separation shall be a responsible person. If the next friend is insolvent, or irresponsible, the husband may apply to stay all proceedings in the cause until security for costs is given, or until a responsible person is substituted. (*Pennington* v. *Alvin*, 1 *Sim. & Stu. Rep.* 264.) And if such security is not given, or a new prochein amy substituted within a reasonable time, the bill may be dismissed. (*Camac* v. *Grant*, 1 *Simons' Rep.* 348. 1 *Paige's Rep.* 181. *Idem.* 644.) In this cause, however, the next friend, in addition to his own affidavit, has produced evidence which is perfectly satisfactory to the court, that he is worth at least double the amount which is prescribed by the statute, as security for costs, in those cases in which the complainant is required to give security.

I regret to be compelled to say that a great part of the affidavits produced on the part of the defendant on this motion are impertinent and scandalous; and I cannot conceive any object the defendant could have had in producing them, except to ruin the character of his own child, and to injure other persons who were supposed to have countenanced this suit. And if, as testified by some of his own witnesses, he misread the affidavits to them for the purpose of making them swear to matters they did not believe to be true, he has been guilty of a misdemeanor; and he may be punished criminally, for attempting in this manner to impose upon the court, and to pervert the course of justice.

The second and third exceptions to the master's report are not properly taken, in point of form. They proceed upon the supposition that the master was bound to furnish the court with valid reasons for allowing the sum he has fixed upon, as alimony for the wife. The order directed the master to enquire and report what sum, if any, was necessary to be paid by the defendant for the support of his wife pending this litigation. But he was not required to give his reasons for adopting the particular sum fixed upon by him. That allowance may be right, although the court may be satisfied the master has arrived at a correct conclusion upon erroneous principles. The first exception, therefore, which relates to the amount of

1832.

Lawrence
v.
Lawrence.

alimony allowed by the master, is the only proper subject of consideration here.

The proportion of the husband's property or income which is allowed to the wife as alimony, either pendente lite, or after the termination of the suit, is in the discretion of the court. And in fixing upon the amount which is proper to be allowed, the court must take into consideration the nature of the husband's means, the situation of the parties in society, the amount of the husband's income; and whether the same is derived from property already acquired, or from his own personal and daily exertions. It is also proper for the court to take into consideration the question whether there are, or are not children or other relatives of the husband who have claims upon him for sustenance or education. By the practice of the ecclesiastical courts in England, the allowance to the wife, as well for temporary alimony pending the suit as for the permanent provision on the decree of separation, is settled upon what is technically called an *allegation of faculties.* This allegation embraces not only a statement of the extrinsic property, but also of the casual income of the husband; and both are taken into consideration in fixing the amount. (2 *Hagg. Consist. Rep.* 200. 2 *Phill. Rep.* 44, 45.) And this court in settling the amount of alimony, also takes into consideration the ability of the husband to provide for himself and family by his own exertions. (*Kirby* v. *Kirby,* 1 *Paige's Rep.* 261.) Where the amount of the estate is considerable, it is usual to allow the wife for permanent alimony, from one fourth to one half thereof, where she is not to have the custody of the children of the marriage. And in the case of *Peckford* v. *Peckford,* (1 *Paige's Rep.* 274,) where there were no children to be provided for, the court allowed the wife one third of the gross value of the property, in the shape of an annuity, which was equal to about one half of the annual income, during her life.

But the alimony which is allowed to the wife for her support pending the suit is always allowed in a much smaller proportion than that which is assigned to her, as a permanent provision, after she has established the fact of such misconduct of the husband as to entitle her to a divorce or separation. In *Biggs* v. *Biggs,* (2 *Phill. Rep.* 43,) £40 was allowed for

1832

Lawrence
v.
Lawrence.

temporary alimony, but upon the termination of the suit it was increased to £75, as a permanent allowance. And in *Smith* v. *Smith,* (2 *Idem.* 152, 235,) only one fourth of the income of the property was allowed, by Sir John Nichol, to the wife pending the suit; but upon the termination of the litigation the allowance was increased to £1000, or one half of the annual income. The reason of the distinction is obvious. It is the duty of the court to discourage vexatious proceedings against the husband, and, as far as possible, to prevent the indiscreet friends of the wife from fomenting family quarrels by holding out inducements for her to institute a suit for a separation upon trivial or insufficient grounds. The husband is presumed to be innocent until the contrary is established. But as he has the legal control of the property out of which the wife must be supported during the litigation, whether she be right or wrong in the prosecution of the suit, and as that can only be settled at the final hearing, the court, from the necessity of the case, must allow her the means of subsistence in the mean time. In that case, however, the court should, in the exercise of a sound discretion, interfere with the property with great caution, and deal it out to the wife much more sparingly than it is proper to do after the termination of the suit. If she succeeds in establishing such improper conduct on the part of the husband as to entitle her to a divorce or separation, she is entitled to a portion of the property as a right founded upon his violation of the marriage contract. And the allowance for alimony, in that case, should not only be liberal, but in some cases, for the preservation of public morals, it should be ample.

The master made a mistake in supposing he had no right, under the order of reference, to enquire whether the circumstances of this case were such as to justify the wife in leaving the house of her husband. It is always necessary to know something of the real nature of the controversy in cases of this kind, for the purpose of ascertaining what is proper to be allowed. And it was the intention of the court to authorize the master, in his discretion, to receive such testimony as might give him the desired information on that head; but without

going into a full examination of the witnesses on either side any further than he might deem necessary. I am satisfied, however, from the affidavits that have been produced on the motion to change the next friend, that this is not a case in which any good can result from an examination of witnesses, to the merits, with a view to regulate the exercise of the discretion of the court in making this allowance of alimony. And if the facts now before me had been presented to the master, I think he could not, in the exercise of a proper discretion, have gone into an enquiry which would have produced no beneficial result.

I have already had occasion to express my opinion, that if the allegations of the husband are true, that the sole cause of this family rupture was his unwillingness to permit his wife to attend a particular church, the wife should not have separated from him on that ground alone. Although it was an act of great unkindness and of unreasonable oppression on the part of the husband to use his marital power in separating his wife from the church of which she was a member, and with which she preferred to worship, I have no hesitation in saying that she mistook her duty in not submitting to the oppressor, if she could not win his consent by kindness and condescension, rather than place herself and her companion, "in the undefined and dangerous situations of a husband without a wife and a wife without a husband." A christian wife and mother should suffer much and long before she can be justified in resorting to the doubtful and dangerous expedient of a suit for a separation. And those who attempt to advise in such a case should recollect that the blessing of Heaven is promised to the promoters of peace and good will in neighborhoods and families, as contradistinguished from those who fan the flame of discord or sow the seeds of strife.

From the statement of the defendant's property and the income thereof, there is probably not enough to support the husband and the wife, without breaking in upon the capital, except by the aid of their own exertions. I presume, however, that this income, divided between them, will be sufficient for that purpose ; in addition to what each can earn by such labor as they were in the habit of performing before the separation. As the parties probably stand upon an equality in this

respect, the master went too far in allowing the wife nearly two thirds of the income of the property for her own personal support pending the litigation. I think if she is allowed a moiety, after making a proper deduction for taxes and other incidental expenses which must of necessity be borne by the husband, it is as much as she can reasonably claim, until the rights of the parties are settled by a decree.

The husband must pay the wife at the rate of $75 per annum, in equal quarterly payments from the 20th of December last; and neither party is to have costs upon these exceptions.