IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT GAINESVILLE,

### OCTOBER TERM, 1851.

Present—JOSEPH H. LUMPKIN, ⎫
        HIRAM WARNER, ⎬ Judges.
        EUGENIUS A. NISBET, ⎭

~~~~~~~~~~~~~~~

## No. 68.—JOHN McGEE, plaintiff in error, vs. ABBY McGEE, defendant.

[1.] The power to grant temporary alimony, is incidental to the jurisdiction of the Superior Courts of this State over divorces.

[2.] Such a power does not belong in this State to a Court of Chancery.

[3.] The Superior Courts may, upon being judicially informed of the fact of the marriage, in a suit for a divorce, on motion, make provision for the wife's maintenance during the pendency of the suit, and for the expenses which she may incur in conducting it; and that, whether she is plaintiff or defendant.

[4.] The amount of the wife's alimony, is a matter of judicial discretion, depending upon the wealth of the husband, his personal income, the number of children or others dependent upon him, and the circle of society in which he is accustomed to move, &c. &c. Alimony *pendente lite*, is less than permanent alimony, and is limited to a support. It is competent for the Court to modify the order for temporary alimony, and reduce or increase it, as may become proper.

Application for alimony, in Walker Superior Court. Decision by Judge JOHN H. LUMPKIN, April Term, 1851.

McGee *vs.* McGee.

This was an application to the Judge in Chancery, by Abby McGee, wife of John McGee, stating, that by the cruel and improper treatment of her husband, she had been compelled to leave his house, and to commence a suit for divorce, which was still pending ; that she had no means of prosecuting her suit, or of supporting herself during its pendency, and praying that she might be allowed out of the defendant's estate a sum sufficient for that purpose.   Defendant answered, under oath, denying the charge of cruelty, and saying that he was willing, and had repeatedly offered to receive her again into his house.   He further stated, that a trial had been had on the suit for divorce, in which the Jury failed to agree, but that he had been informed that ten of the Jury were opposed to granting the divorce.

At the hearing of the application, defendant's counsel insisted—

1st. That the Judge, as Chancellor, could not pass any order touching the suit for divorce, it belonging to the Common Law side of the Court.

2d. That the Judge cannot make a decree for the payment of money, without the aid of a Jury.

3d. That, under the facts of this case, the Court ought not to grant the application.

All which was overruled by the Court, and an order granted, allowing the plaintiff twenty dollars per month, to be paid by defendant.   To which defendant excepted.

Akin, for plaintiff in error.

W. H. Underwood, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The order allowing temporary alimony to Mrs. McGee, was granted, upon motion, after a petition filed.   The petition is addressed " to the Honorable *John H. Lumpkin,* Judge of the Superior Courts of the Cherokee Circuit of the State of Georgia, *holding jurisdiction in Chancery.*"   It is obvious, however, that

the presiding Judge did not regard it as a proceeding in Chancery, and in passing the order, did not act as a Chancellor, but in his character as Judge of the Superior Court. The jurisdiction exercised, was that of a Court of Law, to wit: the Superior Court of *Walker County.* This is obvious upon the face of the order itself. It states first, the case of *Abby McGee vs. John McGee;* recites that this case is a libel for a divorce in *Walker Superior Court;* that a Jury having been impannelled to try it, after hearing evidence, retired to make up their verdict, but being unable to agree, a mistrial was, by consent, entered, and that, therefore, the case was standing over for farther trial. It farther proceeds to state, "that on motion and petition of *Abby McGee* for temporary alimony, to enable her to pay the expenses of prosecuting her suit, and also for a sum to be allowed to her, to be paid monthly by the said John McGee, for her maintenance and support, during the pendency of said suit, the Court having heard the evidence on the trial of said cause, and also having heard and considered the said petition, and the answer of the said John McGee, and the argument of counsel, *hereby orders,*" &c. &c. It then directs that the sum of twenty dollars be paid monthly, by John McGee, into the hands of the Clerk of the Court, during the pendency of the suit, to be, by him, paid monthly to Mrs. McGee, for her support and maintenance, unless the Court shall make farther order to the contrary, and that the order be entered upon the minutes of the Court. The jurisdiction exercised is to be ascertained, not from the *address* of the petition, but from the *action* of the Court. That address the Judge of the Superior Court, who is, under our system, also the Chancellor, had a right to regard as of no consequence, and take action as the Judge before whom the libel for divorce was pending. It was pending before him at Law. The motion was predicated on the pendency of the libel. It was a motion in *that* case. The order is part of the record of *that* case, and could as well have been granted without the petition. Regarding the order for alimony, as passed by the Judge of the Superior Court, in a libel for a divorce pending before him, in a

Court of Law, I proceed to consider the objections to it, urged by the plaintiff in error.

It is insisted by the learned counsel for the plaintiff in error, Col. Akin—

1st. That by the laws of Georgia, alimony can be allowed the wife, only *after* a divorce is decreed by a Jury.

2d. That the Judge of the Superior Court, in a libel for a divorce, has no power to award an order for temporary alimony, but by the intervention of a Jury.

3d. That if temporary alimony can be allowed to the wife at all, it can only be done by bill in Equity, filed for that purpose, and a decree duly rendered thereon upon a trial of the merits by a Jury.

4th. That in his answer to the petition of Mrs. McGee, the plaintiff in error has, on oath, denied the facts upon which she relies for temporary alimony, and the Court being bound to consider his answer, there was no evidence before the Court to warrant the order.

5th. That the amount awarded, the circumstances of the parties, and the amount of the plaintiff in error's estate, considered, is larger than the law will justify.

The first proposition denies altogether the right of a wife, pending a libel for a divorce, to a temporary allowance out of the estate of the husband, for her support and maintenance, and to defray the expenses of the litigation; the counsel insisting that, according to the laws of force in this State, no power is conferred upon the Courts, either of Law or Chancery, to grant any alimony until after a divorce is decreed. The discussion of this proposition will involve the main points in the case. In this State, jurisdiction over divorces is conferred upon the Superior Courts by Statute. It belongs not to our Courts of Equity; and by the Act of 1806, all cases of divorce are to be tried by a Special Jury. The 2d section of that Act declares that the Special Jury " shall inquire into the situation of the parties before marriage, and also at the time of trial, and in all cases where they shall determine in favor of a conditional divorce, they shall, by their verdict or decree, make provision out of the pro-

perty of which the husband may be possessed, for the separate maintenance and support of the wife, and the issue of such marriage, which verdict or decree the said Court shall cause to be carried into effect according to the rules of Law, or according to the practice in Chancery, as the nature of the case may require." By the 8th section of the Act of 1806, it is provided that in all cases of application for a divorce, the party applying shall render a schedule, on oath, of the property owned or possessed by the parties at the time of the application, or at the time of separation, if they have separated, which shall be filed in the Clerk's office, and after all just debts shall be paid, the property shall be subject to an equal division between the children of the parties, *except* the Jury before whom the case may be tried, shall think proper to allow either party a part thereof. *Cobb's New Digest*, 223 *to* 227. We hold it settled by Statute, that the power to grant divorces in Georgia, belongs alone to the Superior Courts, sitting as Courts of Law, and that alimony can only be allowed by the same Courts, through the verdict or decree of a Special Jury, after they have determined upon a divorce. But what kind of alimony? Why, very plainly, permanent alimony. That is, provision out of the property of the husband for the permanent support and maintenance of the wife. Our Statute gives to the Superior Courts the power which, in England belongs to the Ecclesiastical Courts, of annulling the marriage contract, or of separating the parties, and expressly grants what, in that Court, is an incidental power—the power to make permanent provision for the support and maintenance of the wife. It is conceded, too, that these powers cannot be exercised in Georgia, but by and through the Jury. But the power which the Judge exercised in this case, was not that of allowing a permanent provision for the wife. That he could not do. The power which he did exercise, and which is here challenged, is that of allowing to the wife *temporary* alimony. It is conceded to the plaintiff in error, that *this* power is not expressly conferred by Statute, whilst it is also to be claimed against him that it is not prohibited. We look out of the Statute book for its source—that is, out of the express provisions of the Statutes. *First,*

then, I say it is incidental to the power to grant divorces. The Superior Court being clothed with jurisdiction over divorces, from that jurisdiction springs the authority, pending the cause, to provide by summary order for the maintenance of the wife. It is thus that the Ecclesiastical Courts in England acquired the power to grant alimony. That power is not an original jurisdiction—it is derivative and incidental. Indeed, it may be stated as a true general proposition, that no Court has an original authority to decree a separate maintenance, whilst the marriage contract subsists. And when such power is exercised, it is incidental to some other conceded power. Thus a Court of Chancery, as an original power, cannot decree a separate maintenance for the wife; but having jurisdiction over agreements, when there is a separation, and an agreement for separate maintenance, it will specifically enforce that agreement. So, also, after a decree for alimony, it will lend its aid to prevent the husband's evading its payment by *fraud*—or it will restrain him by its writ of *ne exeat regno*, from quitting the jurisdiction. As a general rule, the wife is left to her Common Law right to charge the husband for her support and maintenance.

In this way, I apprehend, originated the power in the Ecclesiastical Courts to provide alimony. Having jurisdiction over divorces, as incidental to that, they acquire the power, where the divorce was decreed to provide permanently for the wife, and the lesser power of providing temporarily for her, whilst the litigation is pending. Both powers they have immemorially exercised.

In *Ball vs. Montgomery*, the Lord Chancellor said, "I take it to be now established law, that no Court, *not even the Ecclesiastical Court,* has any original jurisdiction to give a wife separate maintenance. It is always as *incidental* to some other matter, that she becomes entitled to a separate provision. If she applies in this Court, by a *supplicavit,* for security of the peace against her husband, and it is necessary that she should live apart, as incidental to *that,* the Chancellor will allow her separate maintenance. So in the Ecclesiastical Court, if it is necessary

for a divorce, *a mensa et thoro propter sævitium.*   2 *Vesey, Jr.*
195.

Mr. *Story,* denying, as a general rule, the obligation of a Court
of Equity to decree a separate maintenance, after turning the
wife over to her credit at Law for maintenance, remarks, " Or if
this reliance should be precarious, the wife may make her appli-
cation to the proper Ecclesiastical Court, for a decree *a mensa
et thoro,* or for a restitution of conjugal rights ; and as *incidental
thereto,* (but not as it seems, as an exercise of original jurisdic-
tion,) the latter Court may pronounce a decree for a suitable ali-
mony." *Story's Eq.* §1422.   *See, also, Clancy on Married Wo-
men, b.* 5, *ch.* 9, *p.* 549, 550.   1 *Fonbl. Eq. b.* 1, *ch.* 2, §6,
*note n.*

I see no reason why the *Superior Courts* of this State have not
acquired jurisdiction over temporary alimony incidentally, as the
Ecclesiastical Courts acquired jurisdiction over alimony, both
temporary and permanent.   It is founded in the most manifest
justice and the sternest necessity.   The property of the family
is, generally, legally in the possession and under the control of
the husband.   Always so, except in cases where the wife has a se-
parate estate.   She may have brought a part or the whole of it
into the family.   After a decree for a divorce, which establishes
his delinquency, a provision for the wife is the equitable conse-
quence of his violation of his conjugal obligations.   He being
in the wrong, it would be a strange perversion of right to turn
her adrift upon the charities of the world, he retaining her patri-
monial inheritance ; and if she had none, then it would be still
flagrantly unjust, as well as morally impolitic, to deny to her
that support which, whilst under coverture, religion and the laws
accord to a wife at the hands of her husband.   It is not, there-
fore, unreasonable to say, that the Legislature, in clothing a tri-
bunal with power to decree a divorce, intended thereby, as ne-
cessarily incident to it, to invest the same tribunal with power to
make provision for the wife.   This justice and necessity is equal-
ly as stern, and the inference therefore equally as clear, in re-
gard to temporary as permanent alimony.   Before the delin-
quency of the husband, if the wife is the libellant, or the guilt

of the wife, if he is the libellant, is established, upon naked principles of equity she is entitled to the means of living, and also of redress of her wrongs in the former case, and of establishing her innocence in the latter case. Whatever may be said of the policy of divorces, the right to the means of prosecuting them, and of support during their pendency, so long as they are authorized by law, cannot be questioned. The right to be divorced would be a bitter mockery, if to obtain it an injured wife is obliged to endure, not only violence to womanly delicacy, but penury and destitution. Equally revolting is it to a proud, albeit a wounded spirit, to be constrained to sue, (as Judge *Gaston* suggests she may sue,) in *forma pauperis*, and beg the whilst for food and raiment. Rather than submit to humiliation so great, an *innocent* woman would forego her rights, and endure the iron even whilst it pierced her heart. And what if she be not innocent—what if her suit be unfounded or her defence impossible? Surely, even then, she is entitled to the privilege of the vilest felon, that of being heard. To be heard, she must have the means. To be heard, as becomes a *prima facie* innocent wife, she must appear before the Court and the country, not as a dependent for maintenance, but as a law-protected woman. Again, it is not enough, (as Judge *Gaston* again suggests it is,) that the law gives her a credit for maintenance, founded on the Common Law liability of her husband, and that she may live and prosecute her suit upon that credit. This, it is true, is the reliance upon which the law casts her generally. But not *after* suit is instituted. *Then* it becomes a precarious and inadequate reliance—*then* her relations to her husband are changed—*then* her position in society is changed—*then* her credit may be so weakened as to be wholly insufficient. To force her upon this resource, is to make her dependent upon the will of others. No lawyer, tradesman, butcher or other person is obliged to trust her. They may or they may not. *It is a condition of dependence from which the law intends to rescue her.* Nor do we agree with the same very distinguished Jurist, (Judge *Gaston*,) that it will be better for both parties, that pecuniary means for carrying on the domestic war should not be furnished by law. He believes

that this would be impolitic, because it would promote unfounded and vexatious suits against the husband, exasperate small differences which might be else adjusted by the forbearance of a meek and quiet spirit, and would throw the wife into the hands of mercenary allies, and withdraw her from the counsels of real friends.   Such views would be entitled to respect before the Legislature, if urged against the allowance of divorces at all, but do not command our sympathy when urged against the wife, in a Court of Justice, where divorces are allowed by law.   Let the husband and the wife stand equal before the law.   Give her the same facilities " in the domestic war" that he has.   In most cases he is in the wrong.   This *policy* of the North Carolina Court arms the husband with a fearful advantage over the wife.   *He* has the money and plays the tyrant—*she* has none and becomes a slave.   We agree with Chancellor *Kent* in the following comment upon the opinion of Judge *Gaston*, as to the policy of giving to the Courts the discretion of allowing alimony *pendente lite.* " I am entirely convinced, however, from my own judicial experience, that such a discretion is properly confided to the Courts." *Wilson vs. Wilson,* 2 *Dev. & Bat. Law R.* 377.   2 *Kent's Com.* 99, *note a.*

Alimony, *pendente lite,* is a Common Law right.   It was an established right in England when we adopted the Common Law. It is no less a Common Law right because it grew up under the usages of the Ecclesiastical Court.   What becomes of that right in Georgia?   The Common Law which guarantees it has not been repealed.   It is suited to our condition, and in harmony with our institutions.   We have no Ecclesiastical Court.   The jurisdiation which in England belonged to that Court, has been transferred here, by Statute, to the Superior Courts, and the manner of exercising it pointed out.   Upon the subject of temporary alimony, however, our Statutes are silent.   Under this state of the facts, I repeat the question, what becomes of the right?   Is it a right without a remedy?   Or rather, is not the Superior Court bound to enforce it as much as any other provision of the Common Law?   By transferring the jurisdiction over divorces to those Courts, was it not the intention of the Legis-

McGee *vs.* McGee.

lature, that that jurisdiction should be exercised, except so far as the manner of its exercise is specially prescribed, and except so far as the Common Law is in conflict with the laws of Georgia, and genius of her institutions, according to the Common Law? We think it was; and that with the power to grant divorces, passed the power to enforce the Common Law, which gives to the wife temporary alimony. This conclusion becomes irresistible, when we reflect that if the Superior Courts cannot make this provision, it cannot be made at all.

[2.] Although there are cases in England and in the United States to the contrary, yet I think it must be considered as settled, that as a general rule, Equity cannot interfere upon the ground of desertion, cruel treatment and failure of the husband to maintain his wife, or any like ground, to compel him to furnish her with separate maintenance. The pendency of a suit for divorce, is not itself a ground of equitable jurisdiction. That does not vary the general rule as to Chancery powers over this subject matter. Equity has granted alimony as incident to a decree upon a *supplicavit* for security of the peace against the husband. Equity, in case of ill treatment or desertion by the husband, or of inability or refusal to maintain his wife, will lay hold of any equitable property belonging to her within its reach, and decree a suitable maintenance out of that. So, also, if there is a positive agreement for maintenance, or a decree for alimony, Equity will lend its aid to enforce them. What I mean to say is, that it has no original jurisdiction upon Chancery principles over the subject of the wife's maintenance. If not, generally, for maintenance, then it has none for temporary alimony. The assumption that it belongs to a Court of Law, denies it to a Court of Equity; for if in this matter the wife has an ample remedy at Law, for that reason she will not be heard in Equity. The larger number of those cases in England where Equity has assumed the jurisdiction, occurred during the *Commonwealth*, when the *Ecclesiastical Courts* were suspended, and when their powers had been conferred on the *Commissioners* of the Great Seal. This satisfactorily accounts for the exercise of the juris-

diction during that time. I am thoroughly convinced that an immense preponderance of authority in England is against it.

In *Head vs. Head,* Lord *Hardwicke* said, "I do not find that this Court ever made a decree for establishing a perpetual separation between husband and wife, or to compel a husband to pay a separate maintenance to his wife, unless upon an agreement between them, and even upon this unwillingly." 3 *Atk.* 550. See 2 *Story's Com. on. Eq.* §§1420 to 1425. *Fonbl. Eq. b.* 2, *ch.* 2, §6, *pp.* 98, 99, 100. *Ib. b.* 1, *ch.* 2, §1, *p.* 60, *note c.*

I find, too, that in most of the cases in the States, where these Courts have decreed temporary alimony, the jurisdiction has been conferred by Statute, as in New York, or has been derived incidentally from an express grant of jurisdiction over divorces. In this State, Courts of Equity have no such jurisdiction by Statute, nor can they exercise it, in my judgment, upon those principles of Equity which we have adopted as coming from Great Britain. If this be true, then, our Courts of Law must exercise it, or the wife, in all cases like that before me, has a right without a remedy. Such a thing, I know, will be found under the most perfect judicial system, yet wherever and whenever it is found, it is the opprobium of the science, and the Courts will not permit, if they can prevent it, without encroaching upon the province of the Legislature.

The proposition that the power to allow temporary alimony, belongs to the Court that is clothed with the power of granting divorces, has been acted upon by the Ecclesiastical Courts of England, and by both the Courts of Common Law and Equity in this country, and is sustained by an invincible array of authority. I have met with but one case where it has been distinctly denied, and that is the case of *Wilson vs. Wilson, in the Supreme Court of North Carolina.* The opinions expressed in this case by Judge *Gaston,* I have already adverted to. We cannot yield to the authority of this case, although we admit its eminence. In a recent case in Pennsylvania, under Statutes conferring jurisdiction over divorces, very much indeed like ours, but conferring no power to make an allowance to the wife for the *expenses* of her suit, a motion was made for an order upon the husband

McGee vs. McGee.

for the *expenses*. The Court allowed it, upon the ground that "it was an *incidental* authority to the power given to the Court to decree divorces." *See Equity Cases by Parsons, vol.* 1, *p.* 78. The expenses of the suit and the expenses of maintenance stand upon the same ground. The *expenses* allowed were not the Court costs simply. See, also, the following cases: *Yeo vs. Yeo,* 2 *Dickens,* 498. *Wilson vs. Wilson,* 2 *Const. Rep.* 204. *D'Anquillar vs. D'Anquillar,* 1 *Hagg. Eccl. R.* 707. *Soilleux vs. Soilleux,* 1 *Hagg. Eccl. R.* 378. *Pointer on Marriage and Divorces,* 264. *Monroy vs. Monroy,* 1 *Edwards,* 382. *Wright vs. Wright,* 1 *Ib.* 62. *Denton vs. Denton,* 1 *Johns. Ch. R.* 365. *Mix vs. Mix,* 1 *Ib.* 110. *Wood vs. Wood,* 8 *Wend.* 364. *Wood vs. Wood,* 2 *Paige,* 115. *Lawrence vs. Lawrence,* 3 *Paige,* 267. *Germond vs. Germond,* 4 *Paige,* 643. *Oughton,* 306, *tit.* 206, '9, §7. *Burns, tit. Marriage, ch.* 11, §8. 4 *Porter,* 478, '9.

[3.] Having thus disposed of the first and third propositions of the counsel for the plaintiff in error, I notice now the second, which is, that if the *Superior Courts* have authority to pass the order in question, it can be done only after a Jury has considered the facts and decreed the amount. The counsel relies upon the constitutional guarantee of the trial by Jury. To which I reply the granting of this order is not a trial in the constitutional sense of that word. It is incidental to the trial of the libel, and bears the character of an interlocutory order or decree in Chancery. The Court before whom the libel is pending, is cognizant of that fact from its own record, and it would seem that only one other fact is necessary to be known in order to grant the order, and that is the marriage. When that is admitted, the Court will, as matter of course, allow the alimony. In some of the cases, the Courts have heard evidence and considered the answer of the husband, for its own satisfaction. I have no doubt but that if the marriage was denied, the Court would require evidence of that fact, and would send that issue to a Jury to be found. Nor do I doubt but that the Court may, if it is desirous of instructing its own conscience, as to the amount of the allowance, require evidence of the circumstances of the parties. It is clear, however, that the allowance of alimony does

not depend upon the merits of the issues on the bill.   If that were true, then none could be allowed until after those issues were tried ; that is, until there is a decree.   That would uproot the whole doctrine of temporary alimony.   The rule is, that in a suit for a divorce the Court will, *upon motion*, if the marriage is admitted, order the husband to pay to the wife a sum certain for her support, *pendente lite*, and for the expenses of the litigation, and he will be in contempt if he does not pay it.   In *Wilson vs. Wilson*, Judge *Gaston* says, "It is the established law of the Ecclesiastical Courts, in all suits for divorce, or suits for the restitution of conjugal rights, as soon as the Court is judicially informed that the fact of the marriage has taken place, that it is competent for the wife to apply for alimony pending the suit." 2 *Dev. & Bat. Law R.* 377.   *Mix vs. Mix*, 1 *Johns. Ch. R.* 110. *Oughton*, 306, *tit.* 206, '9.   2 *Dickens*, 498.   The wife, when suit is instituted for a divorce, whether she is plaintiff or defendant, is under the protection of the Court—the Court, as to her, is *in loco parentis*, and will compel the husband to maintain her during the litigation, and pay the means of conducting it, *because she is a wife, and because the suit presumes separation, alienation and dependence.*   Upon these views of the subject, founded in principle and deduced from the authorities, the granting of the order for temporary alimony is not a trial, and is not violative of any constitutional right of the husband.

[4.]  The fourth ground taken by the counsel is, that inasmuch as the answer of the husband, or rather more appropriately designated, his traverse of Mrs. McGee's petition, denies out and out the facts therein stated, the Court had no evidence upon which to base the order, and, therefore, the order was illegal. The principles stated in reply to the last noticed proposition of the plaintiff's counsel, it must be seen at once, are a reply to this also.   The marriage is not denied, and the record before the Judge proved the pendency of the libel.   The denials of the answer are not to be taken as conclusive against the wife.   If, indeed, the answer of the husband, denying the grounds taken for alimony, as cruel treatment, desertion, &c. were sufficient to preclude her alimony, then would the wife be subjected, in this

matter, to his *ex parte* statements ; or to avoid that, the Court, before awarding it, would be constrained to try the merits. We have seen that temporary alimony does not depend upon the merits. Whilst making this statement, I do not deny to the Court the right to inform its own conscience, by enquiring so far as it may feel it necessary into the facts. This is the right of the Court—a different thing from the assumed right of the husband to an investigation into the merits of the libel. And whilst I insist that temporary alimony, as a general rule, is ·consequent upon marriage and suit, yet I also concede that there are cases in the books, where it has been refused upon a denial in his answer by the husband, of the facts upon which the divorce is sought, coupled with an offer to take back his wife and provide for her. If the answer is evidence for the husband, the controverting it is the right of the wife, and thus a trial of merits would be inevitable. It is not, however, true in fact, that there was no evidence but the petition and answer before the Court in this case. The *order* recites that the libel had been once tried before the Judge, and that he heard the evidence on that trial, and that he had considered the answer and the evidence. He was judicially informed, by the trial of the libel, of the merits, so far as to satisfy him that it was right to grant a provision for Mrs. McGee.

The last position of the plaintiff's counsel is, that the amount allowed to Mrs. McGee is too large. The *proportion* of the husband's estate to be given to the wife as permanent or temporary alimony, is a matter of judicial discretion. It is always less in the latter than in the former case. The Court will not encourage vexatious suits by large grants to the wife. She is entitled to a support only, *pendente lite.* What will be a support, depends upon the wealth of the husband—her personal income, if any, aside from his property—the number of children or others dependent upon him, and the circle of society in which she is accustomed to move. The amount is not limited to a fair proportion of *income*, but may trench upon the corpus of his estate. It may depend, too, upon the ownership by the wife of a separate estate, and its amount. If she has a separate estate, *that* is to

be considered by the Court.   2 *Hagg. Consist. R.* 200.   2 *Phill. R.* 44, 45, 48.   2 *Ib.* 152, 235.   1 *Paige,* 246.   3 *Ib.* 270, 271. 4 *J. C. R.* 197, '8.

Taking these principles as a guide, we do not feel authorized to disturb the award.   The discretion was justly exercised.   We should not control *that* but upon clear and strong grounds.   The property of the husband was worth $4,000—there are no children or other dependants in the family, so far as the record speaks—Mrs. McGee has no separate estate.   Twenty dollars per month was the allowance, both for expenses of the suit and maintenance.   We cannot think that too much.   We are the less disposed to interfere for another reason, and that is this, to wit : the order is operative only until farther order of the Court. If it was not so in terms, the Court below has power to modify it—to enlarge or reduce the amount, in the exercise of a sound judicial discretion.

Let the judgment be affirmed.