Daly, F. J.
The order was one affecting a substantial right. As I understand, for no copy of the order is returned, it imposed upon the defendant the payment of. a *194 sum of money weekly for the support of the wife pending the litigation, and if that sum were greater than the plaintiff should be required to pay, a substantial right was affected, and the order was appealable (People v. New York Central R. R. Co, 29 N. Y., 422; Downing v. Marshall, 37 Id., 394).
It has. been held in three cases that an order of this nature is not appealable, which cases it will be necessary to review. It was held by the general term of the supreme court of the second district, in Abbey v. Abbey (6 How. Pr., 340), that an order granting temporary alimony was not appealable. The case is but imperfectly reported in a note to another case, and it is sufficient to say that when it was decided the Code did not contain the clause added in 1852, making orders appealable which “affect a substantial right.” ■■
In Moncrief v. Moncrief (12 Abb. Pr., 315), the late Judge Boitney revoked a stay of proceedings upon an appeal from order granting temporary alimony to the wife, on the ground that such orders are not appealable. “ The purpose,” he says, “ for which these and all similar allowances were made, in all cases, whether the wife be plaintiff or defendant, is to provide for her present maintenance during the pendency of the action to which she is a party, and to enable her to pay expenses of bringing her cause to trial; and if the husband can by appeal stay proceedings on such order of allowance, he may thereby render the- statute which authorizes them, in effect, nugatory; and the wife, whether plaintiff or defendant, may not only be defeated in the action for want of ability to pay the necessary expenses of trial, but may, while the suit is pending, be reduced to absolute destitution, and starved into submission to her husband’s demands.”
These suggestions might be entitled to consideration, if it were in the discretion of the court to say whether appeals in such cases should be allowed or not; but the duty of the court is simply limited to determining whether such an order affects a substantial right, for, if *195 it does, an appeal is given Tby the Code-, and cannot be taken away.
The last of these cases is Griffin v. Griffin (23 How. Pr., 189), where an appeal was taken from an order refusing alimony to the wife in an action brought against her by her husband for a divorce. Judge Hog-eboom said that the order was a matter of discretion, and not reviewable. “It is made so,” he says, “both "by statute and by a long course of decisions.” Neither the statute nor the authorities quoted by Judge Hogeboom warrant the conclusion drawn from them. No one of the cases cited holds, or even intimates, that such an order is not reviewable ; and as respects the statute (2 Rev. Stat., 148), it merely says that the court in every suit brought for a divorce, may in its discretion require the husband to pay any sums necessary to enable the wife to carry on the suit. It does not say that when an order to that effect is made it shall not be reviewable. The Code has an analogous provision,—that the court may, in its discretion, make a further allowance of costs to the prevailing party (§ 309), and the court of appeals have held that such an order is reviewable, by an appeal from the general term to the special term (People v. New York Central R. R. Co., supra). Judge Hogeboom went into the merits of the order, and was of the opinion that the application of the wife for alimony was properly refused, and as the appeal was not dismissed, but the order was affirmed, it may be that the other judges regarded it as appealable, and affirmed it upon the merits.
In People v. New York Central R. R. Co. {supra), it became necessary for the court of appeals to ascertain what is meant by a substantial right, and Chief Justice Demo gave a definition of it, in which the majority of the court concurred,—that an order which peremptorily and finally charges a party with the payment of a sum of money, great or small, which he ought not to pay, affects his rights, not in a matter Of form, but of substance. Justice Johnson says that a final order which gives a party to an action the legal right to enforce the *196 collection of any sum of money, which he would not have otherwise, is a substantial right. The court held that an order for an extra allowance of costs was of this nature; that though the Code makes such allowance discretionary, it is not to be implied that it is the discretion alone of the single judge who makes the order, and does not affect the jurisdiction of the several branches of the court in which the order is made, though upon an appeal to a higher court it would be regarded as a discretion vested solely in that court, and, therefore, not reviewable upon an appeal from it. The general term of the supreme court having refused to examine such an order, regarding it as not appealable, the court of appeals reversed the order made by the general term, dismissing the appeal. Judge Hogeboom, who was then a member of the court of appeals, dissented from the judgment, upon the ground that the order was solely in the discretion of the judge at special term, was not reviewable at the general term, and did not affect a substantial right, entertaining, as would seem from his opinion, the same views of it that he did in Griffin v. Griffin, in respect to the order refusing alimony.
In Downing v. Marshall (37 N. Y., 395), it was held, the whole court concurring, that an allowance made in the discretion of the court to executors, for counsel fees, upon the settlement of an estate, under a will, was the exercise of a legal discretion, and that the judgment was reviewable in regard to such extra allowances, in the court of appeals.
The effect of these decisions in the court of appeals is, that orders which impose upon a party to an action such a charge as the payment of money, not as the condition upon which some favor or relief is granted to him to which he is not entitled as a matter of right, but imposed upon him as an obligation and duty, affect a substantial right, if he ought not to pay it, or a greater amount is imposed than he ought to be subjected to. That such an action is not in the sole discretion of the. judge who *197 makes it, but is the exercise of a legal discretion, which, if erroneous, may be reviewed and corrected.
Orders for the payment of alimony and counsel fees to the wife pending an action for a divorce, come within this class,—1. For the reason that they peremptorily impose upon the husband the payment of money. 2. Because the allowance of temporary alimony by a court of equity is subject to certain rules which have been recognized and acted upon (Lawrence v. Lawrence, 3 Paige, 269, 270, 271; Germond v. Germond, 4 Id., 645, 646 ; Wilson v. Wilson, 2 Hagg. Cons., 200). 3. Because the allowance is made upon affidavits disclosing all the facts and circumstances which are relied upon to show that it is necessary and proper, and the court upon appeal have everything before them which the judge at special term had, who granted the allowance; and lastly, because it has been held that such orders are reviewable upon appeal. In Cooke v. Cooke (2 Phill., 40), Sir John" Nioholl says : “ Alimony,—that is, the allowance to be made to a wife for her maintenance, either during a matrimonial suit, or when she has proved herself entitled to a separate maintenance,—is said to be discretionary with the court; but it is a judicial and not an arbitrary discretion which is to be exercised, and, therefore, it is clearly a subject of appeal.”
The chancellor, in Germond v. Germond {supra), lays down the general rule which is to govern in allowing temporary alimony to the wife, as follows : “As a general rule, to guard against any abuse of the privilege of the wife to obtain a temporary support pending a suit for a divorce, or separation, and to prevent the bringing of improper suits for the mere purpose of obtaining a support during a protracted litigation, the temporary alimony must be limited to the actual wants of the wife, until the termination of the suit in her favor establishes the fact that she has been abused and is entitled to a more liberal allowance ;” and in that case he considered an allowance of $25 a month as too large for temporary alimony for the wife’s support in the city of New York, *198 but for the fact that the state of her health incapacitated her from doing anything toward her own support. This, however, was in 1834, more than a quarter of a century ago, when the value of money was very different from what it is now. But the allowance made here is $50 a week, which is $200 a month, or eight times as much as the chancellor deemed sufficient in 1834, which is very far beyond the difference occasioned in the meanwhile by the depreciation in the value of m'oney. The three children, two of whom are over twenty-one years of age, have from their infancy been supported by their father, and this sum is granted for the defendant’s support alone, independent of the allowance to which she would be entitled for the employment of counsel to defend her in the action.
This amount was probably allowed as the plaintiff is shown to be a man in affluent circumstances. This is a matter undoubtedly to be considered in respect to the husband’s ability to pay what may be ordered, but is not in itself a sufficient reason for making so large an allowance in this case, in view of the aspect in which it presents itself to the court, upon the affidavits submitted by both parties. If the defendant’s statement is true, she has been a much injured woman. She is not only innocent of the charge of adultery upon which the action is brought by her husband to obtain a divorce, but she has had to put up with privation, neglect and ill-treatment continuously through a course of years, which is circumstantially detailed in her affidavit; whilst, if the plaintiff’s statement is true, he has, for the sake of his children, and to prevent exposure, endeavored to live with her, forgiving a serious past offense, and submitting to and enduring all that a man be expected to bear, even for such considerations. She is charged, eighteen years ago, whilst her husband was traveling and earning the means for their mutual support, with having sold out the furniture and effects of the house in which they were living in Williamsburgh, and with having eloped to the *199 West Indies with a paramour, a married man, who left his own wife in poverty, and with heartlessly abandoning her two infant children, who were left dependent upon the charity of a poor woman, with whom they were found by the plaintiff upon his return three months after-wards, and when, deserted and penniless, this act, from her penitence and remorse, and for the children’s sake, was forgiven, and she was taken back and comfortably provided for, that she still secretly kept up an adulterous intercourse with her former paramour; charges, corroborated by three affidavits, made by different persons ; to which it must be added, in respect to her detailed statement of continuous ill-treatment on the part of her husband, that her own children, now arrived at the age of manhood, testify that from their earliest recollection down to the separation between the plaintiff and the defendant, they never saw the slightest evidence of unkindness on the part of their father towards their mother, and never heard any harsh language between them, while on the part of their mother they state that while their father was lying with a severe illness, during which a severe operation was performed, and he was not expected to live, the defendant, though living in the same house, refused for some time, though requested, to go into his room, and did not and would not, until informed that he was not expected to live, when, at her sons’ request, she did so. They both testify that their father always kept the house supplied in the most liberal and comfortable manner, one of them declaring that lie only knew of any difficulty between his father and his mother by observing that they did not speak, whilst the other testifies that he was in utter ignorance of the causes which led to their separation, and that so far from his father attempting to alienate his affections from his mother, he never heard him utter a disrespectful woid in regard to her.
• The proper course, in a case like this, in my judgment, is for the court to adhere strictly to the rule laid down by Chancellor Walworth, and confine the ali *200 mony, during the suit, to the actual wants of the wife, wholly uninfluenced by the fact that the plaintiff is affluent, and entertaining no impression upon the merits of the case which comes before the court upon statements so peculiar and conflicting. This is the only safe rule to follow, to preclude the possibility of a husband’s means.being used by the wife, in abuse, as the chancellor suggests, of her privilege to obtain temporary alimony, while it sufficiently carries out the presumption of innocence by awarding her sufficient to provide for her actual wants. For this purpose, about half the sum allowed, or say $30 a week, is, in my judgment, sufficient, and is about equivalent, in view of the present value of money, to what the plaintiff allowed her upon their separation some eight or ten years ago, for several years, in ignorance, as the plaintiff claims, of her alleged subsequent acts of adultery, and with which, then, she appears to have been satisfied.
The order appealed from, in my opinion, should be reduced to that amount.
Barrett, J.
While entirely concurring with the learned first judge, that the order in question is appeal-able, I am unable to agree with him as to the merits. In my judgment the only error committed by Judge Beady was in awarding what I cannot but think, after a careful consideration of the affidavits, to have been a smaller amount of alimony than the facts justified, and a too moderate counsel fee. As to the latter, it is evident that the sum awarded has been amply earned by the mere preparation of the affidavits, and the argument of the present motion. The defendant is certainly entitled to respectable and competent counsel (against whom, although charged to be incriminated with, her, I do not find a particle of evidence), and, considering the extensive period covered by the charges and counter-charges, their multiplicity, involving, seemingly, an entire family history, the questions of law and the vigor manifested, it seems to me that a fee of three or even *201 four times the amount awai'ded would have been fair and reasonable.
Before discussing the main question, I feel it to be my duty to notice some matters connected with the submission of this appeal. A number of printed pamphlets, containing the plaintiffs affidavits, have been handed up, in which certain prominent features are underscored with red ink. The plaintiff s affidavit is of itself sufficiently declamatory, and it needed none of this pointed and improper emphasis. Indeed, it would have been more considerate to the court to have presented the usual plain statement of facts, rather than this brilliant piece of rhetorical and argumentative narration, in which the affiant swears to sentiment and satire, antithesis and climax, passionate characterization and interjection. The injudicious and unskilled hand of the layman is here visible,—probably the same who is referred to in the appellant’s points as the maker of “very clear, able and pointed,” but certainly intemperate and even disrespectful comments upon the action of the court below. This should not pass unrebuked, and it is to be regretted that the learned counsel have not deemed it their duty to stand between this exhibition of feeling, and the temperate and decorous administration of justice. My colleagues, as I am quite aware, prefer that such conduct should pass unnoticed, but no good purpose is conserved by so indulgent a course, and no written or printed paper should be received couched in language which the court would not suffer upon an oral argument. I therefore advise the return of these pamphlets and points to the source from whence they emanated. To resume.
The material facts bearing upon the question of alimony present a sharp and painful contrast between the circumstances of the respective parties. It is conceded that since 1863 the plaintiff has stopped all alimony, and, with the exception of some §150 or §200, has contributed nothing whatever to the defendant’s support. He gives as a reason for this that the defendant was cir *202 culatiug reports injurious to his reputation, but his real reason, as js apparent from his own letters, was her failure to proceed and obtain a divorce on the ground of his adultery. It is averred that he has been visiting Europe, keeping a yacht, horses and carriages, and mistresses, and that he is living in luxury at the rate of not less than $30,000 per annum. Upon the other side, the defendant says that since 1863 she has supported herself entirely by needlework, laboring the greater part of the twenty-four hours of each day, though frequently in very feeble health, until at length her sorely-tried eyesight has become greatly weakened, and that she is sadly in need of rest. It is averred, also, that the plaintiff is in the receipt of an enormous income, not less than $100,000 according to the defendant’s belief,—over $300,000 according to Fortune’s calculation,—and which the plaintiff himself admitted, according to Mrs. Clara Knight’s testimony, to have amounted in the year 1867 to $60,000, with the expectation of $100,000 in the year following. The plaintiff denies Mrs. Knight’s statement, but admits telling her that his income for the year 1867' was “a certain amount,” but what amount he fails to state. With equal reticence, he puts in a general denial to Fortune’s specific and detailed statement, characterizes the latter’s estimate as “ridiculous, absurd and fabulous,” and declares that he will not stop to notice the details. He then admits the receipt of wliat, without giving facts or figures, he terms “ a respectable income,” but “submits to any intelligent mind whether,” under the circumstances, “the defendant should justly derive any benefit from that fact.” The fair deduction from the statements of the defendant and her witnesses, substantially confessed as they are by this species of denial, is that the plaintiff is a man of great wealth and power, living in an unusually luxurious manner, while the defendant, unassisted by him, maintains a woman’s unequal struggle with the world for bread. Yet the points to which reference has been made characterize the allowance of the modest sum of $50 per week as “unprece *203 dented,” and the action of the court as an “ outrage on decency,”—the latter expression "being put in the form of a quotation from the opinion of Mr. Justice Clerke in Koch v. Koch (42 Barb., 515).
It is as to the weight to "be given to the facts thus found, in awarding temporary alimony, that I am constrained to differ with the learned first judge. He entertains the opinion that the husband’s wealth is a matter to be considered “ only with respect to his ability to pay what may be ordered,” and that in fixing the amount the court should be “ wholly uninfluenced by the fact that the plaintiff is affluent.” With great deference, I take the rule to be otherwise, and that, while the amount of ad interim alimony is always less liberal than the permanent (Kempe v. Kempe, 1 Hagg. Ecc., 533; Otway v. Otway, 2 Phill., 109 ; Cooke v. Cooke, 2 Id., 40), the husband’s wealth, as well as his poverty (Hallock v. Hallock, 4 How. Pr., 160), together with many other facts, should be considered in estimating the former quite as much as in fixing the latter. The wife’s circumstances, condition in life, health, age, residence, and ability to earn money, are also to be considered (Lynde v. Lynde, 2 Barb. Ch., 72 ; Worden v. Worden, 3 Edw. Ch., 387; Miller v. Miller,. 6 Johns. Ch., 91; Hawkes v. Hawkes, 1 Hagg. Ecc., 526 ; Kempe v. Kempe, Id., 532 ; Finlay v. Finlay, Milw., 575 ; Butler v. Butler, Id., 629; Bursler v. Bursler, 5 Pick., 427). The rule stated in Germond v. Germond (4 Paige, 643), undoubtedly confined temporary alimony to the wife’s actual wants, but no precise sum can be fixed as the maximum of those wants. What is an essential for the defendant, not as a toiling, struggling needle-worker, leading an humble and simple life in her apparently outcast position, but as the wife and equal of a person of the plaintiff’s wealth and position, may include what would be luxuries to* many others. Not a few of the luxuries of a person in any station in the year 1834, when Germond y. Germond was decided, have become, owing to a condition of society which, without commending, we must recognize, *204 the ordinary necessaries of to-day. In fact, there can "be no criterion bnt the circumstances of each particular case. Even in Glermond u. Glermond the husband’s circumstances were considered. He was a farmer worth but between $4,000 and $5,000, and the-allowance of $25 per month was made, although probably in excess of his income, and likely to break in somewhat upon the principal. It differed, too, from the case at bar, in that it was for a separation merely, and was brought by the wife. The reason for the rule stated by the chancellor, which was to prevent the wife’s bringing improper suits for the mere purpose of obtaining a support during a protracted litigation, does not obtain where the wife is herself brought into court on charges of adultery. The rule that even in such a case temporary alimony will always be less liberal than permanent, was placed upon the idea, worthy only of feudal times, that although the wife must be presumed to be innocent until proved to be guilty, the mere “bringing of the accusation casts a shadow over her, which should induce her to live in comparative seclusion and consequent economy until it is removed” (Hawkes v. Hawkes, 1 Hagg. Ecc., 526), a doctrine which, like many other unjust and cruel rules applicable to women, has been practically repudiated by this enlightened age. -
It was distinctly said, however, by the same chancellor (Walwobth) in Lawrence v. Lawrence (3 Paige, 270), that in fixing the amount of alimony pendente lite, the court must take into consideration the nature of the husband’s means, the situation of the parties in society, and the amount of the husband’s income; and he cites, with evident approval, the case of Smith v. Smith (2 Phill., 152, 235), where he remarks: “Only one-fourth of the income of the property was allowed by Sir Johh Hichol to the wife pending the suit.” Again, in Kirby v. Kirby (1 Paige, 261), Chancellor Walwobth awarded $25 per month, pendente lite, for the support of the wife and children, where the husband’s property consisted merely of an undivided interest in certain vessels, esti *205 mated at from $500 to $1,000, and where his entire income, including his personal services as captain of one of the vessels, amounted to "but $35 per month. More than half a century ago Chancellor Kent, in Denton v. Denton (1 Johns. Ch., 364), awarded the wife, pendente lite, the husband being worth $200,000, the sum of $100 per month, and $250 counsel fee, these respective amounts being about equivalent, at that period, even upon the first judge’s basis of the increase in value since 1834, to what I think should have been awarded in the case at bar.
In Mix v. Mix (1 Johns. Ch., 108, [1814]), where the husband’s income as a naval ofiicer was “upwards of $70 a month for his pay and emoluments,” a monthly allowance of $30 was awarded by Chancellor Kent. In England it is said to be the general rule to allow the wife for ad interim alimony about one-fifth of the income (Bish. on M. & D., § 614), but where the necessities and claims of the wife have been large, one-fourth has been allotted (Finlay v. Finlay, Milw., 575); and in Brown v. Brown (2 Hagg. Ecc., 5), £50 per annum were granted out of an income of £140. In Harris v. Harris (1 Hagg. Ecc., 351), where the income was £250, and the husband had "the two children to maintain and educate, the wife was allowed £75.
Thus it will be perceived that, the present allowance was by no means “unprecedented,” and that the general rule was stated rather than laid down in Germond v. Gennond, and that the remarks of the chancellor cannot be construed to limit the “ actual wants” of the wife in all cases and under all circumstances, to what can be supplied by any particular sum.
The general rule is, to award alimony in all cases and almost as of course, where a substantial defense is disclosed, and not to try the merits upon conflicting affidavits (Wright v. Wright, 1 Edw. Ch., 62; Hammond v. Hammond, 1 Clarke, 151; Fowler v. Fowler, 4 Abb. Pr., 412 ; Williams v. Williams, 3 Barb. Ch., 628 ; Wood v. Wood, 2 Paige, 108; Strong v. Strong, 1 Abb. Pr. N. S., *206 358). In Fowler v. Fowler (supra), proof of former misconduct was held to be no bar to alimony, while in Williams v. Williams (supra), even a verdict against the paramour in an action of crim. con. was deemed insufficient to deprive the wife of such ad interim support. In Wood v. Wood (supra), there were written confessions of guilt, besides letters, and the testimony of a female servant, while in Strong n. Strong (supra), there had been a trial with a disagreement solely upon recriminatory charges against the husband, ten jurors voting thereon in his favor, and but two for the wife. Even where the verdict is against her on a feigned issue, the alimony continues down to the time of the final decree (Stanford v. Stanford, 1 Edw. Ch., 317; Germond v. Germond, 1 Paige, 83).
It only remains to be considered, therefore, whether, upon the facts before us, the defendant’s guilt and misconduct are so glaring, and the plaintiff’s innocence and ultimate success in the action so clear and certain as to justify the denial of the application upon the principles laid down in such cases as Koch v. Koch (42 Barb., 515), Griffin v. Griffin (23 How. Pr., 189), and Carpenter v. Carpenter (19 Id., 539).
The defendant fully denies every averment of adultery, except that charged with C-, who is now dead, and nearly all of her alleged paramours have made similar denials. Numerous counter-charges are made against the plaintiff, and denied by him, and each side charges the other with many minor and collateral faults and misdeeds; the plaintiff complaining of the defendant’s alleged morose disposition, disobliging nature, and cruel and unwifely conduct,—such as neglecting him, from causeless jealousy, when seriously ill; while the defendant accuses the plaintiff of selfishness, coldness and' neglect, independent of the profanity, violence and brutality, which the sons declare they saw nothing of. The adultery resulting from the elopement charged with C- is admitted to have been condoned, and cannot, therefore, of itself, and as a separate piece of guilt, sus *207 tain the bill. It is claimed, however, upon the affidavit of one Whittaker, that the guilty intercourse with 0-was renewed during the years 1851 and 1852. Whittaker says he kept this fact to himself for about fifteen years, when “about November, 1867, he gave a general intimation in regard to his knowledge of the matter to Mr. John Andrew, an engraver on wood, residing in Boston, who, he presumes, informed the plaintiff, when, for the first time he, Whittaker, communicated the facts.” This state of things suggests difficulty in maintaining the action, rather than the defense, and I' am at a loss to conceive upon what facts, subsequent to the admittedly condoned affair of the elopement, the plaintiff bases his claim, so frequently repeated, and so passionately insisted upon, of the defendant’s glaring and conclusively-established guilt. But even if the C-affair were as charged, the plaintiff’s condonation of the offense was an act less of mercy than of justice ; in fact, a condonation of a lesser, in return for her previous pardon of a greater offense, provided there be any truth in the terrible charge, which I need not state, made at the very outset in her affidavit. This charge, I had almost said, after a careful search, remained undenied. While such is not the case, however, it is utterly ignored in the connection in which it is made, and that although much space is devoted to denying statements immediately preceding, and to explaining those immediately following. In fact, it is not until we come to the last paragraph in this exceedingly lengthy affidavit that the denial is discovered, and it is in these words: “Imost positively deny and contradict all and every charge against me in this answer and affidavits not specially contradicted, some of the said statements being too filthy to answer specifically.” This charge, however, was not an after-thought of the defendant, for in her letter to the plaintiff sent between November 9 and 17, 1858, in which certain alleged grievances are set forth, we find this sentence : “You cannot wonder that I should have lost confidence in you, when you have confessed to me that you have visited a house *208 of ill fame, .... and also when in former times I and my unborn babe suffered from your inconstancy.”' The' plaintiff says he replied to this letter “in the same moderate and considerate tone as before but no copy of the reply is furnished, and we are not told whether he then denied the charge at all, or whether he treated it as too scurrilous for aught save the general and contemptuous contradiction' of his present affidavit; except as it may be inferred that a specific denial of such a charge would naturally have evinced a certain amount of indignation, and would scarcely have been couched in a “moderate and considerate tone.” However this may be, it is quite evident that there are two sides to the case, and that there is not that overwhelming preponderance in favor of the plaintiff and against the defendant which would justify even a reduction of the temporary alimony.
The amount was properly made payable from the date of the commencement of the suit. Such is the almost universal practice in this State, whether with respect to temporary or permanent alimony (Burr v. Burr, 7 Hill, 207; Bish. on M. & D., § 615 ; Forrest v. Forrest, 25 N. Y., 501; and many cases already cited).
The order should be affirmed.
In this opinion Beady, J., concurred.
Order affirmed with costs.