*121 This principle is clearly stated by Dr. Burn, in his Ecclesiastical Law, (1) in this language: “ If the party accused shall prove that the accuser, before the commencement of this suit, had probable knowledge of the crime committed, and yet afterwards had carnal intercourse with the accused, in such case the accuser shall not obtain a sentence of divorce: for the crime will be supposed to have been remitted.” And to explain what is to be understood by probable knowledge, he adds, “ if the husband, suspecting his wife, shall charge her with the offence, and she confesses it; or if he shall have caught her in the act of adultery; or if the witnesses, whom he shall afterwards produce, shall signify to him, before the commencement of the suit, that they can testify of the offence from their own sight and knowledge.”
This last illustration of the rule has been strongly urged by the respondent’s counsel in this case, [from some particular parts of the testimony, which his honor here recapitulated.] But the true import of this rule, in my opinion, is, that the cohabitation of the husband, after the * commission of the offence, [ * 148 ] and after he believes, on probable evidence, the guilt of his wife, is conclusive evidence of the remission. For he cannot be considered as having impliedly forgiven a crime, which he does not believe to have been committed. And without that belief he cannot have knowledge of the crime ; for he may have received the information, without giving it credit. But when he believes, on reasonable grounds, the guilt of his wife, if he will continue to cohabit with her, he shall never afterwards obtain for this cause a divorce.
The counsel for the libellant made a question, whether this rule was not confined to cases where the adultery of the wife was a cause only of separation from bed and board ; or whether it also remains in force here, where that crime is a cause for dissolving the marriage.
For my part, I am satisfied that it is a rule of law in force, to bind the husband in all cases, where he seeks a remedy against the wife, founded on an offence which he has remitted.
It is an ancient rule of the ecclesiastical law on the subject oí divorces, and existed when, by that law, adultery was a cause of divorce a vinculo; for, according to Dr. Burn, a divorce for adultery was anciently a vinculo, and agreeable to the opinion of the church in the beginning of Queen Elizabeth’s reign. But in the 44th year of that reign, in the case of Rye vs. Fulirnbe, in the star chamber, (2) *122 this opinion was changed; and Archbishop Whitgift † and his divines held that adultery was a cause of divorce a mensa et thora only.
It is not easy to assign a good reason for this change of opinion. Perhaps it arose from an apprehension that the crime of adultery would become frequent, if, when committed by either party, it was admitted to be a sufficient cause for the dissolution of the marriage Independent, however, of any positive authority, the rule ought to be received, because it is founded on sound reason and natural equity. And it would be injustice to the wife, and im- [ * 149 ] moral in the * husband, to claim and enjoy, as his peculiar marital rights, the society of his wife, after a knowledge of her offence, and afterwards to cast her off for that same offence.
If, therefore, a husband, believing his wife’s guilt, will afterwards cohabit with her, whether influenced by his compassion or his affections, or induced by her tears, her penitence, or her fascinations, he cannot afterwards avail himself of that offence, to obtain a dissolution of the marriage. And he is bound by his remission, although he after repent of his indulgence, from his subsequent reflections, or from the persuasion of his friends, or from the influence of what he may call the public opinion.
A divorce a vinculo decreed.

 Tit. Marriage, § 11, Divorce.

 Moor, 684.

 In Burn and Salkeld, [vol. iii. p. 138,] he is called Bancroft, but it is IVhitgift m (he original report in Moor.