1830.

Wood
v.
Wood.

---

### L. Wood *vs.* C. Wood.

On a bill for a divorce, if the wife is an infant she must prosecute or defend by her next friend or guardian.

Where an infant defendant put in an answer to a bill of divorce, by her solici-tor, the proceedings were, on her application, set aside for irregularity, and she was permitted to put in a new answer by her guardian.

Although the defendant denies the adultery charged in the bill, they may also set up the adultery of the husband or any other matter in bar of the suit.

Cohabiting with the wife after a knowledge that she has been guilty of adultery, will be such a condonation or forgiveness of the offence as to bar the suit for a divorce.

Forgiveness of the injury by implication, from the fact of cohabitation, ought not to be held a strict bar in all cases against the wife, as she is to a certain extent under the control of her husband.

The charge of adultery, whether by way of crimination or recrimination, should be stated in the pleadings in such a manner that the adverse party may be prepared to meet it on the trial of the issue.

The adultery must be charged with reasonable certainty as to time and place, and the name of the person with whom it was committed, if known, should also be stated.

If the name of the person with whom the adultery was committed is not known to the party making the charge, that fact should be averred, and the time, place and circumstances of the adultery should be stated.

If the charge of adultery is not sufficiently explicit, the objection may be made when a feigned issue is applied for.

Where the wife is the defendant in a suit for a divorce, if she denies on oath the charge of adultery, or shows a valid defence by reason of condonation or otherwise, she is entitled to a reasonable allowance for her support pending the litigation, and to enable her to defend the suit.

THE bill in this cause was filed for the purpose of obtaining a divorce on the ground of adultery. The wife put in a general answer denying the adultery charged in the complainant's bill, and a feigned issue was thereupon directed. A petition was afterwards presented by the defendant, stating on oath that she was innocent of the adultery charged against her; but that her husband had by threats of violence and under peculiar circumstances obtained from her written confessions which he intended to make use of against her on the trial; that since her answer had been put in, she had been informed that adultery on his part would be a bar to the suit; and that he had lived and cohabited with her since the time the written confessions were given. She also alleged that she had been informed and believed that her husband had committed adultery with a particular person named in the petition, and with others whose names were not mentioned. And she asked for leave to amend her answer by setting up these matters of defence therein, and that the feigned issue might be made to correspond therewith. She also stated that her husband was a man of large property, and that her father was poor and confined on the limits, and was unable to support her or to furnish the means of making a

1830.

Wood
v.
Wood.

April 5th.

proper defence.    She therefore prayed an allowance for herself and child pending the litigation, and a sufficient sum to meet the expenses of the suit.

*A. Van Vechten,* for the complainant.

*Julius Rhoades,* for the defendant.

THE CHANCELLOR.   The application on the part of the defendant to put in a new answer must be granted as a matter of right.   The former answer and the whole proceedings founded thereon have been irregular.   It appears from the affidavit of the complainant, as well as from the petition of the defendant, that she was married in January, 1825, when she was only in her sixteenth year.   She was therefore an infant at the time the answer was put in and when the feigned issue was awarded.   She appeared and put in the answer by a solicitor instead of a guardian when she was legally incompetent to understand and defend her own right.   Although a wife may sue or be sued as though she were a feme sole where the bill is filed to obtain a divorce on the ground of adultery, yet if she is an infant she must prosecute or defend by her next friend or guardian as in other cases.  Although she denies on oath that she has been guilty of the adultery charged, she also has a right to set up other matters in bar of the divorce, if the husband should succeed in establishing the fact against her.   She swears she was not advised as to her legal rights when the answer was put in; and she was legally incompetent to make the defence if she did understand them.   If she is now of age she has a right to put in a new answer, insisting upon the adultery of her husband; and any other matter which, if true, will be a legal bar to his suit.   If he has voluntarily cohabited with her after a full knowledge that she had been unfaithful to his bed, it would be such a condonation or forgiveness of the injury as to bar the suit for a divorce.   These principles, introduced into the revised statutes, have not changed the law on the subject of divorce.   They are only declaratory of what the law was previous to their enactment.   In *Foster* v. *Foster,* (1 Consist. Rep. 144,) recrimination was set up in bar of a suit for

a divorce, brought by the husband against the wife, in the consistory court of London ; and the adultery of the husband was held a valid bar, although the adultery of the wife was fully established. In that case Sir William Scott shows such to have been the settled law of England long before the American revolution. It was therefore the law of this state at the time this suit was instituted, and is now incorporated into our statutes. It is true the French law is different on this subject ; but it may also be observed that divorces are there obtained for many other causes than that of adultery. Here they are only granted for the criminal acts of one of the parties, and in favor of the one who is innocent. If both parties are guilty, neither has any claim to relief; and they are in that case suitable and proper companions for each other.

It is also objected to the new answer proposed to be put in by the defendant that she does not specify, except in one instance, the persons with whom the complainant has had criminal intercourse ; so that he may on the trial be surprised with evidence which he is unable to meet or explain. And that it appears from her own showing that there has been a condonation of the adultery attempted to be set up by way of recrimination, if it ever was committed. In *Beebe* v. *Beebe*, (1 Haggard, 789,) Lord Stowell says 'condonation is forgiveness legally releasing the injury, and may be either expressed or implied. On the part of the husband, it may be implied from his cohabiting with a delinquent wife after knowledge of her guilt; for it is to be presumed he would not take her to his bed again unless he had forgiven her. But condonation, by implication from the fact of cohabitation, ought not to be held a strict bar against the wife. She is in a measure under the control of her husband. And this distinction will be found running through all the English case on this subject. (*De'Anguillar* v. *D'Anguillar*, 1 Haggard, 786. *Kirkwall* v. *Kirkwall*, 2 Consistory Rep. 279. *Best* v. *Best*, 1 Adam's Rep. 411.) It does not follow because a donation or forgiveness by the complainant will bar a suit for a divorce, that it will have the same effect as to a defence, by way of recrimination, set up by the

1830.

Wood
v.
Wood.

1830.

Wood
v.
Wood.

defendant. That must depend upon the particular circumstances of the case. (1 Haggard, 797.)

As to the manner in which the adultery should be charged in the bill or answer, the case of *Germond* v. *Germond*, (6 John. Ch. R. 347,) has been cited; but it throws but little light on the subject. The extent of the decision in that case was, that the person with whom the adultery was committed need not be named if his name was not known to the complainant. But the subsequent history of that cause, which was finally disposed of in 1828, (1 Paige's Rep. 83,) may serve to illustrate the necessity and propriety detailing the particular acts of adultery in the bill or answer with sufficient certainty to put the adverse party on his guard, so that he may be prepared on the trial of the issue to rebut or explain the circumstances given in evidence against him. On the first trial, the defendant was surprised with a charge of adultery against her, said to have been committed with a man then dead, and a verdict was found for the complainant perfectly satisfactory to the judge who tried the cause. The chancellor also thought there was no good reason for disturbing the verdict for any other cause than that the testimony was not warranted by the issue. It afterwards turned out that the defendant was an innocent woman. The principal witness, on whose testimony the first verdict had been found against her, had written a letter to the husband offering to furnish him with testimony sufficient to obtain a divorce if he would give him $1000; and this witness was originally named in the bill as the person with whom the adultery was committed. A second trial took place, in which the innocence of the wife was established by the verdict; but some irregularity having been discovered in obtaining the jury, a third trial was awarded. The cause was then tried by a struck jury. The same witness was called, and swore to adultery committed with himself as well as with the deceased person. But the time fixed by him when his own criminal connection took place turned out to be when he was not old enough to commit adultery. It also appeared that two respectable persons had been offered from $500 to $1000 if they would seduce the defendant so that a divorce might

be obtained. And the defendant was again acquitted, to the entire satisfaction of every disinterested person who heard the trial.

The only safe and prudent course is to require the charge, whether of crimination or recrimination, to be stated in the pleadings and in the issues in such a manner that the adverse party may be prepared to meet it on the trial. If the persons with whom the adultery was committed are known, they must be named in the defendant's answer, and the adultery must be charged with reasonable certainty as to time and place. If they are unknown, that fact should be stated in the answer and in the issue, and the time, place and circumstances under which the adultery was committed should be set forth. Neither party has a right to make such a charge against the other on mere suspicion, relying upon being able to fish up testimony before the trial to support the allegation. When information sufficient to justify the charge is given, the party will be possessed of the requisite facts put the charge in a distinct and tangible form on the record. The practice in the ecclesiastical courts of England is to set out all the principal facts of the case in the libel, or in the recriminatory allegation. But perhaps it would not be reasonable to require so much particularity here. If the charges in the bill or answer are not sufficiently explicit, the parties may make that objection when an issue is applied for; and the court will then see that it is so framed that neither party shall take any due advantage of the other at the trial.

It does not appear from the petition or affidavits whether the defendant is now of age, or still a minor. If she is under age, the new answer must be put in by a guardian ad litem, appointed for that purpose. When the cause is at issue either party may apply to the court for a feigned issue agreeably to the 167th rule.

The defendant is also entitled to a reasonable allowance for the purpose of enabling her to defend this suit; and to alimony for the support of herself and child pending the litigation. In *Wilson* v. *Wilson*, ( 2 Consist. Rep. 204,) Sir William Scott says, " In suits instituted either by the hus-

band or the wife, for I consider that fact to be indifferent, the wife is a privileged suitor, as to costs and alimony ; and on the same principle that the whole property is supposed by law to be in the husband. If the wife, therefore, is under the necessity of living apart, it is also necessary that she should be subsisted during the pendency of the suit ; and that she should be enabled to procure justice by being provided with the means of defence." And in *D'Anguillar* v. *D'Anguillar*, (1 Haggard's Eccl. Rep. 788,) the same learned judge says, "In general, the husband is bound to defray the wife's costs ; otherwise the wife would be disarmed, and denied justice. The husband has by the law of this country, all the property ; and therefore, the wife must have the means of self defence, and of subsistence from him ; but when she has a separate fortune the court always considers whether such separate means are sufficient for self defence and self subsistence." If the court is satisfied the wife has no reasonable ground of complaint, or is altogether in the wrong, it might, in the exercise of a sound discretion, refuse the means to enable her to carry on an unjust litigation at the expense of her husband. But it would be manifestly unjust to condemn the wife unheard, or upon the ex parte affidavits of witnesses, when she has had no opportunity to cross examine them or to disprove their allegations.

In this case the husband swears to her guilt, and relies upon her written confessions and letters, and the testimony of his female servant, to establish it. Although he denies the charge of adultery on his part, with the particular person named, he does not deny it generally as to those she has not named in her petition. Nor does he deny that he lived and cohabited with her after the adultery charged against her was committed, and after he had in his possession the written confessions of her guilt. It is impossible, thefore, for me to say whether he will be entitled to a divorce, even if he establishes her guilt to the fullest extent. If she proves the fact of subsequent cohabitation, it may probably amount to such a condonation of her adultery as to bar his claim for a divorce. But her account of the case is materially different ; and as I have before stated, I cannot now undertake to de-

cide between the conflicting oaths of these parties. She says he seduced her at the early age of fifteen, under a promise of marriage, and that being afterwards prosecuted by her father, he consented to marry her; but she says she has been informed that he stated before the marriage he would contrive to get rid of her. She swears that she is wholly innocent of the charge of adultery; that the confessions and letter to her father were drawn by her husband, who compelled her to sign them by threatening violence and to take from her her children, while she was living and cohabiting with him. She further stated that she had been deprived of the advice and counsel of her father in consequence of the violent quarrel which existed between him and her husband. She is a very base and perjured woman, or she has been shamefully used and persecuted. In either case she is entitled to a fair and impartial trial before any decision can be had on the question; and the husband, having sufficient property for that purpose, must furnish the means for the subsistence of herself and child pending the litigation, and of making a proper defence to the suit. Considering the nature of this controversy, it would be unreasonable to require her to remain under the control of her husband in the mean time, or in any situation he may choose to select for her at a distance from her friends.

He must therefore pay to her solicitor or guardian $150 to enable her to defend the suit, and to bear the expenses of the trial of the issue if one shall be awarded. And it must be referred to a master residing in the county of Tompkins, to examine and report what reasonable sum should be allowed to her monthly for the support of herself and of her oldest child; commencing from the time of the filing of the complainant's bill.