## PHEBE L. GARDNER *vs.* JOHNSON GARDNER.

This court, on the suggestion of the clerk, will not proceed with the hearing of a case on the law docket, until the clerk's fees for copies are paid, although such suggestion is not made until after the copies have been delivered to the court.

On the hearing, before the full court, of a motion for a new trial on the ground of newly discovered evidence, the twenty-eighth rule of this court requires that each judge should be furnished with a full copy, and not with a mere abstract, of the affidavits filed in support of the motion, and of the evidence at the former trial.

The respondent cannot except to the refusal of the presiding judge, upon the hearing of a libel for divorce for cruelty, to order further specifications of the times and places of acts of cruelty, charged in the libel with as much precision as is usual in such specifications; especially when accompanied by the intimation that he should be allowed a reasonable postponement to meet any unexpected evidence; and when he does not during the trial ask for any such postponement.

Cohabitation for a single night, immediately succeeding a series of acts of cruelty by a husband towards his wife, is not such a condonation as will bar a libel by the wife for a divorce from bed and board, if the husband by the violence of his subsequent conduct cause a reasonable apprehension in her mind that she can no longer cohabit with him without imminent danger of suffering further cruelty.

Newly discovered evidence of a boy's schoolfellows, as to his capacity to write a certain paper purporting to be written by him, the genuineness of which is material to the issue, is cumulative of evidence given to the same point at the trial by his teachers and by medical men, and therefore affords no ground for a new trial.

A new trial will not be granted on the ground of newly discovered evidence, which might with reasonable diligence have been procured at the former trial.

LIBEL for a divorce from bed and board for extreme cruelty. The libel, which was filed on the 18th of April 1853, alleged that the respondent, " wholly regardless of his vows and covenants, has treated the libellant with extreme cruelty. He has, without cause, heaped upon the libellant the most vile and opprobrious abuse. He has in the grossest language accused her of the most heinous crimes, of which he knew her to be innocent. He has during their intermarriage, and without provocation, frequently *inflicted* on the libellant *in said* Seekonk [where the parties resided] extreme personal violence, and threatened to take her life." The libel then charged specific acts of cruelty by the respondent on the libellant, at Seekonk, some of them accompanied by abusive and threatening language, at the following times: " On the 1st of July 1848, and on divers other days between that day and the 1st of January 1849; " " On the 1st of March 1849, and on divers days and times between that time

and the 1st of December 1849;" "on the 1st of August 1850, and on divers days and times between the 1st of January 1850 and that day;" "on the 1st of September 1850, and divers other days and times between that day and the 1st of March 1851;" "on the 1st of June 1851, and on divers days and times between that day and the 1st of December 1851;" "on the 1st of January 1852, and on divers days and times between that day and the 1st of August 1852;" "on the 1st of September 1852, and on divers days and times between that day and the 1st of January 1853;" "on the 10th of January 1853, and on divers other days and times between that day and the 10th of February 1853;" "on the 27th of February 1853, and on divers other days and times between that day and the 10th of March 1853;" "on the 17th of March 1853, and on divers other days and times between that day and the 1st of April 1853;" "and on the 1st of April 1853, and on divers days and times between that day and the 14th of April 1853."

On the 14th of October 1853, the respondent gave notice that he should require the libellant to file, at the hearing, minute and particular specifications of the days and places when and where the acts of cruelty were committed, and the abusive and threatening words used, and would object to the admission of any evidence in proof of any offence not so specified. And at November term 1853, when the case came on for trial before *Merrick*, J. the respondent moved that the libellant might be required to file such specifications before proceeding to trial. The judge declined so to order, and directed the trial to proceed without any further specifications; but at the same time ruled that the libellant would be held strictly to prove specific acts of cruelty; and that if it should appear at any stage of the trial that the respondent was surprised by the production of unexpected evidence, or of evidence in support of facts of which he had not been so informed as to enable him to make full preparation to answer or to meet and repel it, he would thereupon be entitled to a reasonable postponement for that purpose.

The trial commenced in November 1853, and after the examination of all the libellant's witnesses, and of one of the

respondent's witnesses in part, was postponed until February 1854, when it was resumed and concluded.

It appeared in evidence that the parties continued to live and cohabit together, as husband and wife, until the 14th of April 1854, and occupied the same sleeping room and bed on the night of that day, but not afterwards. The respondent asked the judge to determine that such cohabitation was in law a condonation, and that therefore this libel could not be maintained. But the judge, taking the fact of such cohabitation into consideration in connection with all the other evidence in the case, declined so to determine ; and, in reference to the question of condonation, did find and declare, upon the whole evidence produced by the parties, that the respondent was guilty of having treated the libellant with extreme cruelty, without provocation on her part, and as alleged in the libel ; and that at the time of filing the libel " she had just and reasonable and legal ground of apprehension that she might thereafter receive and suffer further personal injury from his assaults and violence ; and that the libellant was not barred from maintaining this libel, by any condonation, or by act or acts which constitute what is termed in law a condonation ; but, on the contrary, it appeared that she continued to bear and suffer the wrongs and extreme cruelty inflicted upon her, in the hope, either that she might find herself able to endure them without public exposure of her domestic calamities ; or that she might not feel herself compelled, by their repetition, to resort to legal proceedings for relief; or that, in the reformation of the conduct of her husband, he would cease to inflict those wrongs upon her ; and that she did so continue to bear and forbear, down to the time of filing this libel ; and that after the last time next before the filing of this libel, when the respondent, by the violence of his conduct, caused a reasonable apprehension in the mind of the libellant that she could no longer live and cohabit with him without imminent danger of suffering further extreme cruelty from his assaults, she did not cohabit with him as her husband, and that she has never done so since."

The respondent excepted to these rulings and determination :

and at April term 1854, also filed a motion for a new trial for newly discovered evidence, which was opposed on the ground that the evidence was cumulative, and was known to the respondent at the time of the trial.

The clerk prepared copies of the bill of exceptions and motion for a new trial, as well as of the affidavits filed in support of the motion, and of the depositions used at the former trial, and delivered these copies to each of the judges on the first day of this term. The case was continued *nisi*, and came on for argument at Boston, before all the judges but *Thomas*, J. on the 15th of January 1855, when the clerk moved the court that his fees for said copies might be paid or secured before the case proceeded.

*B. F. Hallett*, for the respondent. The clerk's lawful fees will be paid when the case is finished, like other costs. If the clerk had any right to retain the copies until his fees were paid or secured, he waived the right by delivering the copies to the court in October, and cannot now insist upon it. [SHAW, C. J. The copies were furnished *de bene esse*. If the clerk's fees are not paid, we must give the copies back to him; and there will then be no copies on which to hear the case.] The clerk is not entitled to charge for copies of the depositions for all the judges; it would have been sufficient to prepare one complete copy for the chief justice, and abstracts for the other judges. Rule 28 of this court, 24 Pick. 394. And the fees taxed are too large.

SHAW, C. J. The 28th rule is thus: " In every case intended for argument, [at a law term,] copies of all the material papers shall be delivered to each of the judges at or before the opening of the court on the first day of the term, or immediately upon the entry of the action upon the law docket; and no action shall be so entered by the clerk, until the papers are prepared and ready to be delivered as aforesaid; provided, that when the question arises upon a special verdict, a writ of error, or *certiorari*, or the answers of trustees, or in a suit in equity, it shall be sufficient to make out one complete copy of the material papers, to be delivered to the chief justice, and abstracts of the same, to be delivered to each of the other judges; such abstracts to be so made as to present fully the question intended to be argued "

37 *

This case, we think, is not within the exception. The exception is where an abstract will indicate the points. But when the determination of the case depends upon a weighing and comparison of evidence, each judge must be furnished with a full copy of the evidence. The exception does not apply, because the reason of the exception does not apply.

The respondent then gave security, to the satisfaction of the clerk, for his fees. And the case was fully argued on the bill of exceptions and motion for a new trial.

*R. Choate & B. F. Hallett*, for the respondent, to the point that the respondent was entitled, as a matter of right, to the specifications called for, cited *Adams* v. *Adams*, 16 Pick. 254; Bishop on Mar. & Div. § 303; *Wood* v. *Wood*, 2 Paige, 113; *Fellows* v. *Fellows*, 8 N. H. 160; and to the point that the subsequent cohabitation of the wife was a condonation of the cruelty, and a bar to the suit, Bishop on Mar. & Div. § 357, and authorities cited; *North* v. *North*, 5 Mass. 320; *Anon.* 6 Mass. 147; *Williamson* v. *Williamson*, 1 Johns. Ch. 488; *Wood* v. *Wood*, 2 Paige, 108; *Johnson* v. *Johnson*, 4 Paige, 469; *Delliber* v. *Delliber*, 9 Conn. 233; *Quincy* v. *Quincy*, 10 N. H. 272; *Evans* v. *Evans*, 2 Notes of Cases, 470; *D'Aguilar* v. *D'Aguilar*, 1 Hagg. Eccl. 773.

*L. F. Brigham*, for the libellant, to the point that a refusal of the presiding judge to order further specifications was not a subject of exception, cited *Haynes* v. *Morgan*, 3 Mass. 208; *Pierce* v. *Thompson*, 6 Pick. 196; and to the points that the husband's cruelty was not absolutely condoned by subsequent cohabitation, and that the cohabitation was presumed to be upon condition that the cruelty should not be revived, nor any reasonable fear of it excited, *Perkins* v. *Perkins*, 6 Mass. 69; *Snow* v. *Snow*, 2 Notes of Cases, Supp. 15; *Angle* v. *Angle*, 6 Notes of Cases, 197; *Wilson* v. *Wilson*, 6 Notes of Cases, 290; *Burr* v. *Burr*, 10 Paige, 20; *Threewits* v. *Threewits*, 4 Desaus. 560; *Hollister* v *Hollister*, 6 Barr, 449.

The substance of the evidence introduced in support of the motion for a new trial, so far as it is material to the understand-...g of the points of law decided, is stated in the opinion of the court, which was delivered at April term 1855 bv

DEWEY, J. 1. The respondent contends that he was entitled, as a matter of legal right, to the granting of his motion for a particular specification of the times and places of the several acts alleged in the libel, and that, until this was furnished him, he ought not to have been put on his trial.

The great principle, here urged, of affording full opportunity to a party charged with any illegal act to understand the nature of the charge, and to prepare his defence, is entirely sound, and it is the duty of the presiding judge as fully to secure these objects as the nature of the case will admit, and to protect a vigilant party from being surprised by evidence in relation to a subject not anticipated, and which he has not had the opportunity to meet and repel. This may lead to requiring a particular specification of the nature of the causes of action in a civil suit, or of the acts relied upon to support a libel for divorce.

But ordering a specification is one of the steps preparatory to the trial, and like amendments to pleadings, postponing to a future day, and the like, must, to a great extent, rest in the discretion of the presiding judge. Such order will usually involve no legal question, but depend upon the circumstances of each particular case. It by no means follows that further specifications are of course to be ordered, when asked for. In each case, it becomes necessary to recur to the pleadings already before the court, as well as to regard the nature of the subject, and how far it admits of details. If the declaration or libel is already specific, or as much so as an ordinary specification would be, nothing further is to be required.

To apply this principle to the present case — had this libel contained only the general allegation of cruelty between the periods of the 1st of January 1848 and the 14th of April 1853, the application of the respondent for a more particular specification would have been a proper motion, and ought to have been granted. But upon recurring to this libel, it will be found to contain eleven distinct charges of cruelty, committed at as many distinct periods of time. Of these, seven allege periods varying from nine to four months, while the remaining and more recent

acts of cruelty are charged as occurring within brief periods of time. These are specifications, and are as precise in point of time as would ordinarily be required in specifications.

In this state of the case, the presiding judge might properly decline to grant the motion of the respondent, and especially might he decline to do so, when he accompanied that ruling with the further statement that if it should appear at any stage of the trial that the respondent was surprised by the production of unexpected testimony, or of evidence in support of facts of which he had not been so informed as to enable him to make full preparation to answer and meet it, he would thereupon be entitled to a reasonable postponement for that purpose.

But if this were more doubtful, the subsequent course of the proceedings at the trial of this case, clearly shows that the respondent, by the postponement of the hearing for three months after the libellant had put in all her evidence, had the fullest opportunity to prepare to meet the entire case of the libellant thus fully developed. He attempted to do so, suggesting at no time any surprise, nor asking any postponement to meet any unexpected evidence introduced by the libellant.

In the opinion of the court, there is no sufficient ground for granting a new trial on account of the refusal of the presiding judge to grant the respondent's motion that the libellant file more particular specifications of the several allegations contained in her libel.

2. The further exception is to the ruling of the presiding judge as to the matter of condonation.

It appears from the bill of exceptions that the latest act of personal violence, alleged to have been committed on the person of the libellant, is stated to have been committed on the 14th of April 1853; and that the libellant occupied the same sleeping room and bed on the night of that day, but not afterwards; and that this libel was filed on the 18th of April.

The counsel for the respondent insisted that such cohabitation was in law a condonation on the part of the wife of all previous acts of cruelty, and would of itself preclude the maintaining of this libel for divorce. The presiding judge held that this fact

must be considered in connection with other facts in the case; and finding from the evidence that after the night of the 14th of April, and before the filing of this libel, " the respondent by the violence of his conduct caused a reasonable apprehension in the mind of the libellant that she could no longer live and cohabit with him without imminent danger of suffering further extreme cruelty from his assaults;" and that after this violence towards her the libellant did not cohabit with him as her husband; he ruled that such cohabitation on the night of the 14th was not a condonation of all acts of cruelty prior to that night.

It has sometimes been supposed that the doctrine of condonation, arising from continued cohabitation, was inapplicable to cases of libel by the wife, seeking a divorce for extreme cruelty. The cases of *Perkins* v. *Perkins*, 6 Mass. 69, and *Hollister* v *Hollister*, 6 Barr, 449, are to that effect. But the better established rule seems to be ·that cruelty, as well as adultery, may be the subject of condonation. *Burr* v. *Burr*, 10 Paige, 20. *Whispell* v. *Whispell*, 4 Barb. 217. *Masten* v. *Masten*, 15 N. H. 159. Bishop on Mar. & Div. § 369, and cases cited. The English cases are to the like effect. But Dr. Lushington, in *Snow* v. *Snow*, 2 Notes of Cases, Supp. 15, says that the two offences of adultery and cruelty are so distinct in their nature that the same considerations cannot be equally applicable to both, as respects condonation.

Condonation is not so easily to be inferred against the wife, from her cohabitation, as it might be against the husband. *Wood* v. *Wood*, 2 Paige, 108. *D'Aguilar* v. *D'Aguilar*, 1 Hagg. Eccl. 773. *Beeby* v. *Beeby*, 1 Hagg. Eccl. 789. The state of the respective parties differs materially in their opportunities of at once withdrawing from the scene of discord and violence Forbearance for a season may be not only a justifiable, but a necessary step on the part of the wife; and when shown to have been so, no condonation for acts of extreme cruelty is to be inferred from such cohabitation.

But any condonation by the wife of cruelty to her on the part of the husband is upon the explicit condition that he will hereafter treat her with conjugal kindness; and any breach of this

condition revives the right to maintain a libel for the original offence. *Burr* v. *Burr*, 10 Paige, 20. Bishop on Mar. & Div. § 372. The breach of such condition may be shown, in cases of libel by the wife for cruelty, by evidence which would be insufficient to establish the principal charge. Here words of heat and passion, and any acts of violence in conduct causing a reasonable apprehension of renewed acts of cruelty, would be properly before the court, and might fully answer all grounds of defence arising from alleged condonation. *D'Aguilar* v. *D'Aguilar*, 1 Hagg. Eccl. 773. *Beeby* v. *Beeby*, 1 Hagg. Eccl. 789.

Such is the rule of law as to condonation; and conceding, what we should by no means admit as a universal rule, that a cohabitation for the single night immediately succeeding the last act of cruelty which was made the ground of a divorce, would *per se* operate as a condonation, unless such condonation was forfeited by subsequent misconduct of the husband, it is clear, upon the facts found by the presiding judge, whose report as to the facts is to be taken to be correct, and who alone has heard the evidence at large in the case, that the subsequent violent acts of the respondent, within the well settled principles governing this class of cases, revive the right of the wife to proceed for the original cause for the divorce, and effectually bar the defence of condonation.

3. This brings us to the consideration of the petition filed by the respondent in April 1854, for a rehearing of this case generally, upon the ground of newly discovered evidence. The grounds of this application arise principally from alleged newly discovered evidence to establish the fact of Walter S. Gardner's incapacity to have written a certain paper exhibited at the trial. It is somewhat important to understand the precise bearing of this question as to the authenticity of this paper. The acts of cruelty relied upon by the libellant to sustain her libel were testified to by various witnesses, and particularly by Eleanor P. Gardner and Josephine A. Gardner, daughters of the parties. The paper was not and could not be introduced as testimony to support the charges in the libel. It was no part of the libellant's

case, as proof of such facts. It only became competent after the respondent had introduced in the defence the testimony of his son Walter, and was introduced by the libellant to impeach Walter by showing that he had given a different account of the matter from that stated on the trial. Looking at it in this as· pect, the newly discovered evidence would only tend to sustain a former witness who is supposed to have been discredited at that hearing. On the part of the respondent, however, it is said that the question of the genuineness or falsity of this paper is very material in its bearing upon the whole case; and that, if shown to have been a false and counterfeit paper drawn up by the principal witnesses for the libellant, it would establish a con· spiracy to maintain by forgery and fraud the case of the libel- lant. And in this view of the case, the facts in relation to the genuineness of the paper do become of importance, and the newly discovered evidence would be material.

The further inquiry is, whether it is cumulative merely. If so, the general rule certainly is that it furnishes no legal ground for a new trial. *Gardner* v. *Mitchell,* 6 Pick. 116. *Sawyer* v. *Merrill,* 10 Pick. 16. *Whitbeck* v. *Whitbeck,* 9 Cow. 266. *The People* v. *Superior Court of New York,* 5 Wend. 114, and 10 Wend. 285. Whether particular testimony is cumulative or not, is often a question of some nicety. This court has, in common with many other tribunals, been disposed to limit this objection as to cumulative testimony to that which is most obviously so, and not to apply it to all testimony tending to establish the same fact. If it differs in kind, as an admission of a party to some facts about which evidence had been given of a different kind, that has been thought sufficient to take it out of the rule. *Chat- field* v. *Lathrop,* 6 Pick. 418. *Gardner* v. *Mitchell,* 6 Pick. 116. *Watts* v. *Howard,* 7 Met. 480. So, when the evidence on the trial was wholly circumstantial, and the newly discovered evi- dence positive and direct. *Guyot* v. *Butts,* 4 Wend. 579. *Bar- ker* v. *French,* 18 Verm. 460.

To determine with accuracy how far this new testimony is cumulative, it is necessary to look at the evidence produced at the hearing. From the report of that evidence, we find the issue

was distinctly taken as to the fact whether Walter S. Gardner did write the paper; that a part of the evidence offered was to show that Walter had not capacity to write the paper. Walter himself testified to that effect, and so did several other witnesses, including two physicians who testified as to defects in his eyes. It is in part a different kind of evidence, if the source from which it comes gives it that character; as the new evidence from his school companions of his incapacity to learn to write at school; but generally it is not only testimony to the same facts, but also by the same class of witnesses as testified at the trial. There was the testimony of the medical profession, and the testimony of the teachers, on that occasion. It is now proposed to add to both these classes further witnesses to the same effect. The prevailing character of the newly discovered testimony is certainly that of strictly cumulative evidence, and as such is obnoxious to that objection when relied upon as a ground for a new trial.

4. But the stronger objection to granting the motion for a new trial is that arising from the laches of the respondent. Upon the effect of want of due diligence in the party, the authorities are quite uniform, and the rule is well established that a new trial will not be granted on the ground of newly discovered evidence, if it appear that with reasonable attention and diligence such new testimony might have been procured before the trial. *The People* v. *Superior Court of New York*, before cited. *Williams* v. *Baldwin*, 18 Johns. 489, and cases cited. *Stearns* v. *Allen*, 18 Verm. 119. This rule is one of great practical importance, and binding upon the court. It is necessary to secure to litigant parties the termination of their legal controversies. Every facility is to be granted to the parties to present their case fully at the hearing. This is their day in court; this the time to exhibit all their proofs. If they lie by, through over confidence in their own strength, or in a mistaken belief of the weakness of their adversary, and the result is against them, they must abide the consequences. The law allows us to open the case anew for further proofs, only when it appears that the newly discovered evidence could not have been procured with the exercise

of due diligence; and when the party is informed of the existence of material evidence which he cannot procure in time for the trial then in progress, he should apply to the judge to postpone the trial; and if he goes to trial without the evidence, the court will not grant a new trial to enable him to introduce it. *Jackson* v. *Malin,* 15 Johns. 293.

Has the respondent exercised due diligence; and does it now appear that the new testimony could not have been obtained with reasonable diligence on the former trial?

It appears, by the cross interrogatories proposed by the respondent to the libellant's witnesses, by the evidence at the former trial, and by his own affidavit in support of his petition for a new trial, that, before the hearing in February, he knew of the existence of the paper, and that the ability of Walter to write it would be a material subject of inquiry; that he had taken the testimony of two physicians to this point; and that when the paper was produced at the trial, he suggested no surprise and asked for no postponement. And after the hearing was finished and the opinion pronounced, the only questions reserved were upon rulings in matters of law, stated in the bill of exceptions, and already considered. It was not until a later period that any suggestions were made that the case had not been heard upon all the evidence that was material for a proper adjudication of it.

There are some other facts in this case not to be overlooked. The relation of the respondent to Walter carries with it every presumption that he personally knew, during the entire pendency of this libel, Walter's ability or inability, as the case may have been, to write such a paper. Indeed, in his affidavit accompanying this petition, he admits " he knew Walter could not write a paper, unless his hand was guided by some one, on account of his blindness." This fact of Walter's ability to write such a paper was not to be proved by distant witnesses, by application to uncertain sources, nor confined to the knowledge of a few persons. The proposed new evidence at once discloses the facility with which most of it might have been procured. We cannot doubt that, with proper attention and

diligence, the testimony of those who had been teachers or schoolmates of Walter might easily have been procured in season for the former hearing, or some short adjournment thereof. To open the case anew to supply it would, under the circumstances, be an entire departure from the rules of law. Such new testimony could only change the result by destroying the credit of Eleanor and Josephine, the two daughters of the respondent, and virtually declaring them guilty of conspiracy and perjury to sustain this libel. Whatever might be shown as to Walter's capacity to write, there still remains, from the other witnesses, full and abundant testimony to sustain the charge of cruelty, and it is only by destroying their credit that the defence can be maintained.

The respondent, in our opinion, has shown no sufficient ground for opening anew the hearing of this case, for the purpose of introducing further evidence of the incapacity of Walter S. Gardner to have written the paper in question.

The court then went into an extended examination of the other evidence relied on as furnishing grounds for a new trial, (which involved no discussion of points of law,) and upon the whole matter, were of opinion that the motion must be overruled, and a                    *New trial refused.*