## LOUISA SKINNER, Appellee, Petitioner,

### vs.

## WILLIAM H. SKINNER, Appellant, Defendant.

APPEAL FROM DECREE OF THE CIRCUIT COURT OF MILWAUKEE COUNTY.

The rule in applications for divorce is the same as in ordinary cases in equity; the petitioner must come into court with clean hands.

The *cruel and inhuman treatment* which lays the foundation for a divorce, must be unmerited and unprovoked, or wholly disproportioned to the provocation.

It is a sufficient answer to a petition for divorce on the ground of cruelty and habitual drunkenness, that the petitioner herself was regardless of her conjugal duties; that she frequented houses of ill-fame and associated with prostitutes and wantons.

THIS was a petition for divorce from the bond of matrimony. The pleadings, evidence, and the decree of the court below, are succinctly stated in the opinion of the court:

*Arnold & Hamilton*, for appellee.

*Yates & Fraser*, for appellant, made the following points:

1. "Upon application for divorce, where both parties are found guilty of any of the enumerated offences for which a decree may be granted, the court should dismiss the bill." *Nagle vs. Nagle*, 12 *Missouri R.* 53.

"In a suit brought by a husband against his wife for divorce on the ground of habitual drunkenness for more than two years, the wife may recriminate that he had been guilty of adultery; and such fact being found, will prevent his getting a decree." *Ryan vs. Ryan*, 9 *Mo. R.* 535.

2. Under circumstances of guilt on both sides, the court will dismiss both parties, and leave them to find sources of mutual forgiveness in the humiliation of mutual grief. Either a husband, or a wife, who enters the court with a criminal imputation on the conduct of the other, must be free from all reasonable imputation of the same nature. *Page's Law of Divorce*, 234; *Bishop on Marriage and Divorce*, § 388 *to* 409 4 *Petersdorf's Abr.* 20, *tit. Baron & Feme* (*note*).

3. In a suit by the wife for a divorce on the ground of cruel or inhuman treatment, or other ill conduct of the husband, the defendant may show in his defence, and in bar of the suit, a just provocation in the ill behavior of his wife; and this would be a good defence without the aid of a statute. *Waring vs. Waring*, 2 *Hagg. Con. R.* 144; 2 *Kent's Com.* 128.

4. In such a suit the husband may recriminate that the wife has been guilty of adultery, and such fact being found, will prevent her from getting a divorce. *Ryan vs. Ryan*, 9 *Mo. R.* 535; *Nagle vs. Nagle*, 12 *Mo. R.* 53.

*By the Court*, COLE, J. This is an application by Mrs. Skinner for a divorce from the bonds of matrimony, on account of cruel and inhuman treatment by her husband. In her petition, after alleging that she has been a faithful and obedient wife, and has, on her part, kept and performed her marriage covenants, she charges her husband generally of using personal violence upon her, and specifies four instances of cruel and inhuman treatment, stating particularly the time and manner of the same. She likewise charges, that her husband has been ill-tempered and unkind; has indulged in most abusive language towards her, and that for several years past he has been an habitual drunkard.

The defendant, in his answer, denies all the allegations of cruelty set forth in the petition, and, by way of recrimination, charges, that the petitioner has not been a kind and faithful wife; but that she has, against his wishes, frequently and repeatedly left his house and infant child to attend German balls and dances; and been from home to a late hour of the night; that she has, against his consent, absented herself from home for weeks; that she has been in the habit of visiting brothels, and houses of ill-fame, and of associating with notorious prostitutes, and persons of lewd and infamous character.

To this answer the usual replication was filed, and the parties went to hearing upon the evidence taken in the case.

The Circuit Court decreed a dissolution of the marriage contract existing between the parties, and that the defendant should

pay $230, the amount then due, and unpaid upon a previous order entered in the cause; and also should pay the sum of $1,000 for the support of the petitioner and her child, the issue of the marriage, and should give sufficient security for the payment thereof within six months from the date of the decree.

We do not know what there might have been in the character of some of the witnesses, as known to the court below, which would impair the weight of their testimony; but upon the proof as it appears here, we are unable to affirm this decree, for the reason that the petitioner has no right to complain of the defendant's violation of matrimonial duties, when she has shown herself equally regardless of them. She comes into a court of equity, asking to be divorced on the ground of ill-treatment received from her husband, when her own misconduct has undoubtedly brought upon her much, if not all, of the very illtreatment of which she complains.

It is well settled, that the cruelty which lays a just and legal foundation for a divorce must be unmerited and unprovoked. And when the wife is ill treated on account of her own misconduct, her remedy is a reform of her own manners, unless the return from the husband is wholly unjustified by the provocation, and quite out of proportion to the offence. *Poor vs. Poor*, 8 *N. H.* 307; *Best vs. Best*, 1 *Addams*, 410; *Holden vs. Holden*, 1 *Hagg. E. R.* 453; *Wood vs. Wood*, 2 *Paige*, 108; *Bishop on Mar. and Div.* ch. 20, 22, and cases cited in the notes; *Bedell vs. Bedell*, 1 *J. C. R.* 604; *Watkins vs. Watkins*, 2 *Atk.* 96.

It is quite impossible to comment, in mild and temperate language, upon the conduct of these parties, as that conduct is disclosed to us by witnesses sworn in the case, so much is there to condemn, and so little to approve of, in the actions of either, and in their general deportment, each towards the other; and I have therefore thought that I should more fully subserve the purposes of justice by stating the general effect of this testimony upon our minds, and the result at which we have arrived in considering it, than by spreading out a detailed history of the married life of these parties, many passages in which are as disgusting as they are disgraceful to human nature.

And first it is to be observed that it is as difficult to tell when the bitter waters began to flow in this case, as perhaps it would be unprofitable to point out to the parties the source from whence they sprung. On the one hand, it would seem that the husband is a man of coarse nature, who, in his sober moments is not destitute of feelings of kindness and affection; but who is intemperate, and has been for years; an infirmity well known to the wife, before marriage; and when intoxicated is of an irritable temper, quarrelsome, frequently using towards the wife most opprobrious language, which, if she did not merit, she gave, by her associations, too much occasion for him to apply to her; all ending frequently in acts of personal violence, and mutual contests, in which it is as difficult to see who was the aggressor, as it is who was the victor. But though this conduct of the husband is very reprehensible and improper, yet that of the wife appears to us to be more so.

It was stated by her counsel on the argument, that the case showed that for the first two or three years of her married life her conduct was entirely exemplary. We have looked in vain through the testimony in the case to find evidence of that fact, and also to ascertain when it was that she was a faithful and obedient wife, and kept and performed her marriage vows. We have very strong reasons for suspecting there never has been such a period ; and we are confirmed in this opinion, as well from the natural bent of her inclination and disposition before marriage, as from her conduct since 1853. Her mother, Mrs. Ward, who was the principal witness relied upon to sustain the allegations of the petitioner, states that the petitioner was always willful, ill-tempered and ungovernable. She also testifies to an incident in the petitioner's life before marriage, which throws a flood of light upon her character. I refer, of course, to the time when the petitioner, then a young woman about eighteen years of age, on account of trouble and difficulty with her father, cut off her hair, dressed herself in men's clothes, and went on a boat from Milwaukee to Cleveland. Such conduct in a young woman, evinces, in the clearest manner, a mind insensible to decorum, delicacy and purity of life. But her departure from the path of

rectitude and propriety, since her marriage, has been greater and more glaring. At what time she commenced attending German balls and dances upon Sunday evenings against the wishes of her husband, though sometimes attended by him, does not very distinctly appear, but that she was accustomed to do so is a fact established beyond all doubt.

Again; her mother testifies that she had often threatened to kill her husband, and that she intended going from home awhile, and then return and stay a few weeks to break and destroy what she could, and make trouble for her husband. This, taken in connection with the fact that she did actually leave home at times—once clandestinely in the fall of 1854, and was gone three or four weeks; at another time, leaving her husband while visiting friends in Ohio, and coming home without him; her visiting houses of ill-fame; associating with prostitutes, riding with them by day through the streets of a large city; and what does it all show, but that her conduct has been most wanton, most wicked, and most disgraceful? And if after having set at defiance public sentiment and good morals, and contemned her husband's wishes and authority; if she is beaten and abused by a drunken husband, and called vile names, and married life rendered insupportable by his cruelty, whom has she to blame for the evil but herself? Certainly a wife can give no greater provocation for ill-treatment than conduct like this. And although, "even among the very lowest classes there is generally a feeling of something unmanly in striking a woman," yet, if the offence can be at all palliated, or excused, it is when a wife, by lewd and lascivious behavior is bringing dishonor upon her husband and children.

Believing that in the present case the petitioner has by her own misconduct provoked the ill-treatment of which she complains, we have to suggest, that the way of reform is open to her; and if afterwards the husband is guilty of cruelty, she can come into court with clean hands, and ask for its interposition in her behalf.

The decree of the Circuit Court must be reversed, and the petition of the appellee dismissed.