## JONES *vs.* JONES.*

1. The recriminatory plea of adultery to a petition for divorce on that ground, must be clearly set out in the answer.

2. In a suit for divorce on the ground of adultery, the court cannot lay hold of any matter not properly put in issue, on the ground that public policy and public morals require it.

3. An act of adultery committed by the husband and forgiven for years, should not be held to compel the husband to submit, without redress, to the faithlessness and unrestrained profligacy of his wife. It is better to hold that when the erring party is received back and forgiven, the marriage contract is renewed, and begins as *res integer*, and that it is for the party, and not for the courts, to forgive the new offence.

*Mr. Larrison*, for petitioner.

*Mr. Keasbey*, for defendant.

THE CHANCELLOR.

The petitioner applies for a divorce from his wife, the defendant, on the ground of adultery. The parties were married in this state, in 1851, and were both residents of this state at the time of the alleged adultery, and of the filing of the petition. There is no question as to the jurisdiction of the court.

The adultery is alleged to have been committed in March, April, May, and June, 1865, at Hoboken and in New York. The first question in the case is one of fact, whether the adultery is proved.

I can have no doubt as to the adultery. No one can read the testimony of Rosanna Lehman, Mary Bolen, Eliza Deigneur, and Kate O'Neill, and doubt it. The defendant and her alleged accomplice, William H. Marvin, deny it under oath. But the facts and circumstances sworn to or admitted by them, standing alone without any other evidence, would excite great suspicion, if not alone sufficient to convince any one of their guilt. And the explanations they attempt of

* CITED *in Reid* v. *Reid,* 6 *C. E. Gr.* 333.

their long continued and peculiar intercourse, and the circumstances attending it, are too thin and transparent a disguise to deceive or mislead for a moment. The adultery is established. The only defence is recrimination, charging the complainant with having committed adultery. This is a good defence if properly brought before the court, and true in fact, and not condoned. The statute makes it so. *Nix. Dig.* 224, § 5.

But in this case the defence is not set up in the answer, and the facts upon which the defence is founded were, if true, known to the wife before the suit. The question then arises, must this defence be pleaded or set up in the answer? The ordinary rules of pleading at law and in equity would seem to require that it should be; and the decisions in the English Ecclesiastical Courts, and in the courts of the different states where it has been discussed and adjudicated, require it to be set up in pleading; the only exception seems to be when the complainant, in putting his case, shows his own guilt. *Bishop on Mar. and Div.*, § 408; *Foster* v. *Foster*, 1 *Haggard's C. R.* 144; *Brisco* v. *Brisco*, 2 *Addams* 259; *Smith* v. *Smith*, 4 *Paige* 432; *Pastoret* v. *Pastoret*, 6 *Mass.* 276; *Wood* v. *Wood*, 2 *Paige* 108; *Morrell* v. *Morrell*, 3 *Barb. S. C. R.* 236.

And the statute, (*Nix. Dig.*† 225, § 16,) says expressly, that the "answer shall fully and plainly set forth the causes of his or her defence." The answer in this case sets up the defence, that the defendant is not guilty of the adultery, but no where, in any way, charges the petitioner with adultery on his part. This defence, given by the same statute, is no where clearly or plainly set up; and is a very different defence from that pleaded. This is a suit *inter partes;* and the court cannot lay hold of any matter not properly put in issue, on the ground that public policy and public morals require it. Collusion of the kind where both parties conspire to impose upon the court, and fraudulently to procure a release from their marriage vows, against the provisions and policy of the law, is a very different case.

---

* *Rev.*, p. 319, sec. 30.   † *Rev.*, p. 316, sec. 11.

But if the defence was properly proved, there is a very serious question, whether it is proved sufficiently to bar the petitioner's claim to relief. The only proof attempted is by showing that the petitioner had the venereal disease three times; once at Montville, in 1855, again at Montville, in 1856, and the third time at Newark, in April, 1862. The proof is strongest as to the years 1855 and 1856. Yet there are many circumstances that throw very grave suspicion over the proof as to those two occasions. I lay the defendant's testimony out of consideration, as entirely unworthy of credit; that of the two women is too uncertain; and the whole depends on the proof of the two Gradsons. If Timothy Gradson is to be heard, and he is not impeached or contradicted, it would seem that the petitioner had the venereal disease in 1856, and proof of that disease, clearly made out and not explained, is proof of adultery. The proof of this disease in 1862, is not sufficient. It depends upon the evidence of the defendant and Dr. Tichenor; and the value of the testimony depends entirely upon the truthfulness of the defendant. Her statement is essentially different from his; and her testimony, if not so contradicted, would not be sufficient to establish this defence, against the oath of the complainant.

But if I was entirely satisfied with the proof of this disease in 1856, and without the grave doubts which I entertain, the defence is met by the fact of condonation. Mrs. Jones says she knew of this disease at the time, and how it was contracted, and she has lived with the complainant and had two children by him since. It is twelve years ago, and eight years before he went to the war, in 1862. This presents a clear case of condonation. If the adultery was clearly proved, the fact of condonation is placed beyond doubt, and this would raise the question, whether condoned adultery of the plaintiff will bar his application for a divorce for adultery of his wife.

On this question the authorities, both in England and this country, are conflicting and undecided. *Bishop on Mar.*

& *Div.*, § 405 *to* 407 ; *Shelford on Mar. & Div.* 442 ; *Beeby* v. *Beeby*, 1 *Hagg. C. R.* 789 ; *Anichini* v. *Anichini*, 2 *Curteis* 210 ; *Wood* v. *Wood*, 2 *Paige* 108 ; *Morrell* v. *Morrell*, 1 *Barb. S. C. R.* 318 ; *S. C.*, 3 *Barb. S. C. R.* 236.

But notwithstanding the statute does not expressly limit the bar to uncondoned adultery, I should be much inclined, if compelled to decide the question, to coincide with *Bishop* in his remarks in section 407 *a*, and with Dr. Lushington in his views expressed in *Anichini* v. *Anichini*, and to hold that an act of adultery committed by the husband and forgiven for years, should not be held to compel the husband to submit, without redress, to the faithlessness and unrestrained profligacy of his wife ; the penalty is too severe for a forgiven offence. It is better to hold that when the erring party is received back and forgiven, the marriage contract is renewed and begins as *res integer*, and that it is for the party, and not for the courts, to forgive the new offence.

On either of these two grounds, I think in this case the bar of the adultery of the petitioner must fail as a defence.

The divorce *a vinculo matrimonii* is decreed.