## FITZHUGH *v.* FITZHUGH.

EQUITY PRACTICE; DIVORCE; ADULTERY.

1. Where a bill for divorce on the ground of adultery makes a specific charge of act, person, place and time, and then follows with a general allegation of similar acts with the same person, at the same place and at times before and after the specific date before alleged, the allegations, taken together, will not be deemed too vague and uncertain, especially when a demurrer for the alleged vagueness and uncertainty is first urged on appeal, and it appears from a consideration of the charges of the bill in connection with the matters alleged in the answer filed with the demurrers and the testimony in support of each, that the defendant was put to no disadvantage by the generality of the paragraph of the bill demurred to.
2. A decree granting a divorce *a vinculo* on the ground of adultery *affirmed*.

No. 880.  Submitted May 4, 1899.  Decided June 6, 1899.

HEARING on an appeal by the defendant from a decree of

the Supreme Court of the District of Columbia granting an absolute divorce upon the ground of adultery. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry E. Davis, Mr. Chas. Cowles Tucker,* and *Thos. G. Jones* for the appellant.

*Mr. E. Hilton Jackson* and *Mr. Justin E. Flannery* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The bill in this case was filed by Philip H. Fitzhugh against his wife, Mary T. Fitzhugh, to obtain a divorce.

Complainant alleged that one Lafayette B. Eaton had been a boarder in his house for some months. That by reason of the conduct of the parties he had been led to suspect the existence of improper relations between the defendant and said Eaton. "That the complainant for a time believed the protestations of innocence made by the defendant until he learned that under various pretexts she was meeting said Eaton on many occasions."

"That during the latter part of January or first of February, A. D. 1897, the defendant did commit adultery with said Eaton at complainant's house at 3007 Fifteenth street, northwest, in said city and District aforesaid."

And "That prior to and since the occasion aforesaid the defendant has at the same place, on repeated occasions, committed adultery with said Eaton."

2. Defendant filed a demurrer and answer together. The former was specially directed to the last paragraph quoted above from the bill, as being insufficient because vague, indefinite and uncertain.

The answer denies positively the guilt charged in the bill and sets out the relations between all the parties. Eaton became a lodger in their house early in 1895, and remained until about February, 1897. Defendant entertained him

publicly in the parlor, which was accessible and resorted to by other boarders.

That in the course of time complainant became jealous of Eaton and complained of his playing cards with and reading to her.

In the latter part of January or first part of February, 1897, she learned that a nephew of complainant, who was a clerk of complainant and also lived in the house with them, had charged her with adultery with Eaton. She informed complainant of the charge, denounced it as false, and demanded the discharge of the nephew. Complainant declared his belief in her innocence and promised to discharge the nephew, which he did two months later. She cohabited with complainant until she left for a summer trip to Virginia, in June, 1897. She remained in Virginia with her father until September, 1897. Returning she remained in the house until April, 1898, occupying a separate room. She then left the house and refused to live with complainant because of his repeated charges of infidelity.

Though complainant made the charges, his conduct negatived belief in them, and he parted from her with a kiss. She would have separated from him earlier had she believed that he had accepted the charges of his nephew as true. She further says that she did object to the requirement that Eaton should leave the house in February, 1897, but only because complainant asserted his utter unbelief of the charge made against her, and she believed that if Eaton was required to leave, it might lead others to believe that the charge was true, and give undue publicity to the scandal. Explicit denial is made of the charge of adultery with Eaton at the time and place alleged, or at any other time or place. The demurrer was not set down for hearing and the testimony was taken in support of bill and answer. The case was heard on the pleadings and testimony, and a decree was passed on December 17, 1898, sustaining the bill and granting the divorce on the ground therein alleged.

3. The first error assigned is on the refusal to sustain the demurrer when urged on the final hearing. Whether this demurrer ought to be considered as waived by the course of proceeding in the case need not be determined, as no objection has been raised, on that account, to its present consideration.

Undoubtedly, there should always be certainty in the bill—such reasonable certainty as the nature of the case admits, in order that a defendant may have a fair and reasonable opportunity to prepare for the defense. *Vansant* v. *Lindsley,* 2 App. D. C. 421, 423; *Wood* v. *Wood,* 2 Paige Ch. 108, 112.

If a bill be defective in this respect it is subject to demurrer if seasonably urged. The practice of moving for a bill of particulars, which was the subject of consideration in *Vansant* v. *Lindsley, supra,* seems to have no countenance in the procedure of equity. *Cornell* v. *Bostwick,* 3 Paige Ch. 160, 162.

It is to be borne in mind, however, that the facts necessary to be proved in cases of this character are generally to be inferred from circumstances and situations having a wider range in point of time than in ordinary cases, and hence, to some extent, interfering with precision of statement. *Thayer* v. *Thayer,* 101 Mass. 111, 113.

The bill first makes a specific charge of act, person, place and time, and then follows with the general allegation of similar acts with the same person, at the same place, and at times before and after the specific date before alleged. Taken altogether these allegations are not too vague and uncertain. *Goodwin* v. *Goodwin,* 23 N. J. Eq. 210; *Black* v. *Black,* 26 N. J. Eq. 431, 433; *Thayer* v. *Thayer,* 101 Mass. 111, 113.

When, too, the charges of the bill are considered in connection with the matters alleged in the answer, and the testimony in support of each, it becomes apparent that the defendant was put at no disadvantage by the generality of he paragraph excepted to.

4. The remaining assignment of error questions the sufficiency of the evidence to sustain the decree. It is as usual circumstantial. As no question of law is involved, there is no useful purpose that would be served by reviewing the evidence and presenting its details in the course of discussion. Mindful of the character of the charge upon which the decree rests and its serious consequences to the defendant, we have carefully examined and considered the entire testimony in the light of the forcible arguments addressed to the points of weakness suggested, and of the pungent criticism of some of the witnesses. But whilst the testimony of one or more of the witnesses for the complainant might justly fall under that criticism, if unsupported, there is much thoroughly credible testimony of many circumstances, the weight of which remains unshaken, and the inferences from which lead to but one reasonable conclusion.

We find no error in the proceedings, and the decree must therefore be affirmed. The costs of this proceeding will be taxed against the appellee.          ·          *Affirmed.*