## LEWIS E. TOULSON *vs.* SARAH P. TOULSON.

*Condonation by Husband of Wife's Adultery a Bar to His Bill For Divorce.*

Appeal from the Circuit Court for Talbot County (MARTIN, J.) *Affirmed.*

On the twenty-third of October, 1900, the appellant filed his bill against his wife, the appellee, charging her with adultery with one Joseph Williams, "and with divers other men whose names" were unknown to him.

The appellee answered denying the charges and averring that the appellant had been himself unfaithful to his marriage vows. She also alleged in her answer, that subsequently to the filing of the bill, "the complainant co-habited with the said defendant." Testimony was taken and the proceedings were submitted to the Court, who thereupon dismissed the bill and from the decree the appellant appealed.

We would subserve no good purpose if we should discuss the testimony that appears in the record. After a careful consideration of it, we have had no difficulty in reaching the conclusion, that the charges against the appellee of adultery with Joseph Williams and with Edward H. Fields have been fully sustained. An important question for us to consider is, has the appellant condoned the offense of the appellee? The facts of the case upon this point may be thus briefly stated. The appellant discovered the appellee in the act of adultery with Joseph Williams on the twenty-eighth of August, 1900. Previously thereto, as the appellant himself states, her husband had suspected her of unlawful intimacies with other men; and the proof shows that his suspicions were well founded. Notwithstanding his discovery, he continued to live in the same house with her until after the bringing of this suit, a period of over three months. During that period, they resided in his house, and she, it seems, continued to perform her household duties, as she had done before. She states (and it is not denied) that she cooked, washed and worked for him as had

been her habit. She further states that during the same period, "she slept with him," and "lived and cohabited" with him as usual. He denies that he cohabited with her, but admits, that she "had come and got in bed with him." It seems clear, therefore, that after his discovery of her guilt, there was no separation of the parties, no change in the conduct of the wife in the affairs of the household, and that she had at least once occupied the same bed with him, but whether oftener than once or not does not appear.

The mere fact that she was permitted by him to reside in the same house, performing her usual occupations therein, without any apparent change in their relations to each other, is not *per se* sufficient to establish condonation. The husband may "indulge at least, in some feelings of pity for her degraded situation and until a fit retirement is provided, allow her the protection of his roof but not the solace of her bed." 2 *Bishop on Mar. and Div.*, sec. 281, citing from *Poynter Mar. and Div.*, 236. But it furnishes some evidence tending to prove sexual intercourse, that married persons reside in the same house, and such evidence would be corroborated and strengthened, if it also appear that the wife was permitted to resume her usual duties. But all inferences from such a state of facts may be repelled by the particular circumstances of the case. *Berry* v. *Berry*, 3 Ec. R. 342; *Westmeath* v. *Westmeath*, 4 Ec. R. 292.

In *Burns* v. *Burns*, 60 Ind. 259, it was said that sexual intercourse "will be inferred, nothing appearing to the contrary, from the fact of living together of husband and wife." In this case, however, the inferences of marital intercourse that may be drawn from the fact of living together are greatly strengthened by the further fact, that since the discovery of her guilt by her husband, they have occupied the same bed. Such a situation will necessarily create the presumption that marital intercourse has taken place, and when that is the case, the further presumption will arise that the husband has condoned the offense. *Bishop on Mar. and Div.*, sec. 282. It is there said, "it is enough, at least, against the husband that he has been once in bed with his wife, after learning of adul-

tery." *Marsh* v. *Marsh*, 13 N. J. Eq. 285; *Harper* v. *Harper*, 29 Mo. 303. Under such circumstances the Court will always refuse him divorce. *Bishop on M. and Div.*, sec 273, and cases cited: *Doe* v. *Doe*, 52 Hun. 496; *Burns* v. *Burns*, 60 Ind. 260; *Perkins* v. *Perkins*, 6 Mass. 69; *Anonymous*, 6 Mass. 147.

The cases relied upon by the appellant's counsel in no wise impugn the principles we have stated. In those, the ground upon which the divorce was asked, was that of cruelty, and not of adultery. It was contended in them that continued cohabitation was not applicable where the ground of divorce was extreme cruelty. But it was held that was not correct, though the two offenses of adultery and cruelty were so distinct in their nature that the same considerations cannot be applicable to both as respects condonation. *Gardner* v. *Gardner*, 2 Gray, 441.

It was also held in those cases that condonation carries with it an implied agreement that the party who forgives another does so only on the condition the other party will not repeat the offense, but will perform all marital duties the relation imposes. *Kennedy* v. *Kennedy*, 87 Ill. 254. But we do not find it necessary now to decide (and we do not) whether the doctrine of these cases ought to be sustained, for the reason that the application here is based upon the charge of adultery and not of cruelty, and there is no evidence in the record tending to show that since the condonation, the wife has repeated the offense or refused to perform her marital duties.

Opinion by PAGE, J., filed November 21st, 1901.

Submitted on brief by *J. C. & C. Mullikin*, for the appellant.